Barry Warren KIBBE,
Petitioner-Appellant,

v.

Robert J. HENDERSON, Superintendent,
Auburn Correctional Facility,
Respondent-Appellee.

No. 554, Docket 75–2128.

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1976.

Decided April 8, 1976.

As Amended May 5, 1976.

**494**

Sheila Ginsberg, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for petitioner-appellant.

Barbara Shore Resnicoff, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondent-appellee.

Before LUMBARD, SMITH and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

After a jury trial in New York's Monroe County Court, Barry Warren Kibbe was found guilty on November 30, 1971 of murder, robbery in the second degree and grand larceny in the third degree. He brings this appeal from an order of the Northern District denying his petition for habeas corpus which was sought, in part, because the trial judge failed to charge the jury with respect to causation of death on the murder count. The bizarre circumstances that prompted Kibbe's apprehension and conviction for murder present one of those rare cases in which a habeas corpus petition pursuant to 28 U.S.C. § 2254 genuinely puts at issue the guilt or innocence of an accused. See *Schneckloth v. Bustamonte,* 412 U.S. 218, 250–75, 93 S.Ct. 2041, 2059–2072, 36 L.Ed.2d 854, 876, 890 (1973) (Powell, *J.,* concurring); *Ralls v. Manson,* 503 F.2d 491, 494–99 (2d Cir. 1974) (Lumbard, *J.,* concurring). We hold that the trial judge's instructions permitted the jury, in its fact-finding process to disregard Kibbe's colorable claim that, as to the murder charge, his actions had not caused the death of a decedent and thus violated Kibbe's constitutional right to have every element of the crime with which he was charged proven beyond a reasonable doubt. We therefore grant the writ with respect to the murder count.[1]

Kibbe and his codefendant, Roy Krall, met the decedent, George Stafford, at a bar in Rochester, New York on the evening of December 30, 1970. Stafford had been drinking heavily and by about 9:00 p. m. he was so intoxicated that the bartender refused to serve him further. Apparently the defendants saw Stafford offer a one hun-

---

1. Kibbe also claims that the writ should issue because certain evidence admitted at trial was seized in violation of the Fourth Amendment proscription against unreasonable seizures. Even if Fourth Amendment claims are cogniza-
ble on habeas corpus, a matter presently before the Supreme Court, see *Wolff v. Rice,* —— U.S. ——, 96 S.Ct. 3037, —— L.Ed.2d ——, 44 U.S. L.W. 3485 (1976), we would find this claim to be without merit.

dred dollar bill for payment, which the bartender refused. At some point during the evening, Stafford began soliciting a ride to Canandaigua from the other patrons in the bar. Kibbe and Krall, who confessed to having already decided to rob Stafford, offered a ride and the three men left the bar together. Before starting out for Canandaigua, the three visited a second bar. When the bartender at this bar also refused to serve Stafford because of his inebriated condition, the three proceeded to a third bar, where each was served additional drinks.

Kibbe, Krall and Stafford left for Canandaigua in Kibbe's car about 9:30 that evening. According to statements of the defendants, as Krall was driving the car, Kibbe demanded Stafford's money and, upon receiving it, forced Stafford to lower his trousers and remove his boots to prove he had no more. At some time between 9:30 and 9:40 p. m., Stafford was abandoned on the side of a unlit, rural two-lane highway. His boots and jacket were also placed on the shoulder of the highway; Stafford's eyeglasses, however, remained in the car. There was testimony that it was "very cold" that night and that strong winds were blowing recently fallen snow across the highway, although the night was clear and the pavement was dry. There was an open and lighted service station in the general vicinity, but testimony varied as to its precise distance from the place where Stafford was abandoned. In any case, the station was no more than one-quarter of a mile away.

About half an hour after Kibbe and Krall had abandoned Stafford, Michael Blake, a college student, was driving his pickup truck northbound on the highway at 50 miles an hour, ten miles per hour in excess of the posted speed limit. A car passed Blake in a southbound direction and the driver flashed his headlights at Blake. Immediately thereafter, Blake saw Stafford sitting in the middle of the northbound lane with his hands in the air. Blake testified that he "went into a kind of shock" as soon

as he saw Stafford, and that he did not apply his brakes. Blake further testified that he did not attempt to avoid hitting Stafford because he "didn't have time to react." After the collision, Blake stopped his truck and returned to assist Stafford, whereupon he found the decedent's trousers were around his ankles and his shirt was up to his chest. Stafford was wearing neither his jacket nor his boots.

Stafford suffered massive head and body injuries as a result of the collision and died shortly thereafter. An autopsy revealed a high alcohol concentration of .25% in his blood. The Medical Examiner testified that these injuries were the direct cause of death.

Kibbe and Krall were apprehended on December 31, 1970. They were tried for robbery and for the murder of Stafford under New York Penal Law § 125.25(2) which provides:

> A person is guilty of murder in the second degree when:
>
> \*     \*     \*     \*     \*     \*
>
> (2) Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.[2]

In his charge to the jury, the judge failed to define or explain the issue of causation as that term is used in § 125.25(2). No mention was made of the legal effect of intervening or supervening cause. Nevertheless, defense counsel failed to take any exception whatsoever to this omission. The jury returned guilty verdicts on the charges of second degree murder, second degree robbery, and third degree grand larceny. Kibbe was sentenced to concurrent terms of imprisonment of 15 years to life on the murder conviction, 5 to 15 years on the robbery conviction, and up to 4 years on the grand larceny conviction.

The Appellate Division affirmed the conviction on finding that there was sufficient evidence that Stafford's death was caused

---

2. Intent to kill is not a requirement under the statute.

by appellant's acts "as well as by the acts of Blake." The court stated that while the trial judge's charge concerning causation was "lacking in detail" appellant had not questioned the sufficiency of the charge on appeal and no exceptions to or requests for a charge on causation had been made at trial. *People v. Kibbe,* 41 A.D.2d 228, 342 N.Y.S. 386 (4th Dept. 1973). Justice Cardamone dissented on the ground that the issue of causation should have been submitted to the jury. The New York Court of Appeals also found sufficient evidence of causation and unanimously affirmed the convictions. *People v. Kibbe,* 35 N.Y.2d 407, 362 N.Y. S.2d 848, 321 N.E.2d 773 (1974). Although the sufficiency of the charge was argued before the Court of Appeals, the court held that it was within the Appellate Division's discretion to refuse to reverse on those grounds.

Kibbe then petitioned for habeas corpus in the District Court for the Northern District. Judge Foley denied the petition and, on the question of the jury charge, noted that the correctness of instructions does not raise a constitutional claim cognizable on habeas corpus.[3] Appeal to this court followed.

### Deliberate Bypass

■ The state appellate courts declined to consider the sufficiency of the trial judge's charge because appellant failed at trial to take an exception to or make a request for an instruction respecting causation. Mindful of the limited role that federal courts must play in reviewing the convictions of state prisoners, we may inquire further regarding Kibbe's claims only if his omission did not constitute a deliberate bypass of the orderly procedures of the state courts.[4] *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

This court has not hesitated to find a deliberate bypass that precludes federal habeas corpus relief when failure to make a contemporaneous objection, mandated by the state's valid procedural rules, comported with trial strategy contrived by the defendant and his counsel. See *United States ex rel. Terry v. Henderson,* 462 F.2d 1125 (2d Cir. 1972); *United States ex·rel. Cruz v. LaVallee,* 448 F.2d 671 (2d Cir. 1971), cert. denied, 406 U.S. 958, 92 S.Ct. 2064, 32 L.Ed.2d 345 (1972); *United States ex rel. Schaedel v. Follette,* 447 F.2d 1297 (2d Cir. 1971). In *Cruz,* for instance, where appellant had failed at trial to object to the admissibility of an allegedly coerced confession, the court determined that it was the deliberate and consistent trial strategy of the defense not to question the voluntariness of the defendant's statement. 448 F.2d at 673. It was found that questioning the validity of the confession would have conflicted with the defense tactic of conceding the defendant's act but asserting the existence of mitigating circumstances. Thus, the deliberate bypass of a contemporaneous objection precluded later habeas relief.

This case, however, presents a wholly different situation. It is clear from the 1300 pages of pre-trial and trial transcript that the defense strategy was to demonstrate that the immediate and culpable cause of Stafford's death was Blake's operation of his truck and not the defendants' conduct. Prior to commencement of trial, Kibbe's counsel unsuccessfully moved to dismiss the indictment on the ground that the grand jury testimony dealing with the murder count revealed that defendants had left Stafford off the road and that he had been killed by a collision in the middle of the highway. Counsel for both Kibbe and Krall

3. Judge Foley cited *United States ex rel. Mintzer v. Dros,* 403 F.2d 42 (2d Cir. 1967) for this proposition. In that case, however, the court held only that the specific objections there at issue failed to raise questions of constitutional dimension.

4. The interest of the state in protecting its procedural rules seems somewhat diminished

here by the fact that on this appeal the Attorney General of New York has not even argued or briefed the theory that Kibbe deliberately bypassed his right to object to the trial judge's charge. See Wright & Sofaer, Federal Habeas Corpus for State Prisoners: The Allocation of Fact Finding Responsibility, 75 Yale L.J. 895, 961–62 (1966).

cross-examined Blake extensively on the speed he was traveling, the weather and road conditions, and his reactions after he spotted Stafford in front of him. The attorneys also vigorously questioned the Medical Examiner to establish that the collision was the immediate cause of Stafford's death. At the close of the prosecution's case, counsel renewed the motion to dismiss the murder count. Attorneys for both Kibbe and Krall argued the motion in terms of the prosecution's failure to demonstrate the necessary causation. Krall's attorney stated:

> It's our contention that the People's proof has failed to prove the guilt of the defendant beyond a reasonable doubt as a matter of law in connection with that count. The proof had been shown that the cause of death of this [decedent] was severe injuries sustained through being struck by an automobile which the driver of which testified to operating it at a speed of 50 miles an hour in a 40-mile an hour zone. That he saw this form on the roadway when a hundred, two hundred feet away and made no effort to avoid it because, as he said, he was shocked and therefore did not apply the brakes and did not swerve his wheels in an effort to avoid this man. The defendant Roy Krall was under no obligation to anticipate a result like that.

Kibbe's attorney joined in the motion with a similar argument. The motion to dismiss was renewed and denied once more at the close of the entire case.

In their summations to the jury, defense counsel again argued that insufficient proof of causation required a judgment of acquittal on the murder charge. Kibbe's counsel maintained that the evidence failed to demonstrate that Stafford was left in a helpless condition and that some of the indications of helplessness, e. g., the disarray of his clothing, may have been caused by the impact of the collision.

■ These constant references to causation indicate that Kibbe sought to convince the court and jury that his conduct was not the culpable factor in Stafford's death.

Nevertheless, no objection was taken to the trial judge's failure to charge the jury on the question of causation. In light of the conscious trial strategy of the defense, however, we believe that this omission was obviously inadvertent and does not constitute a deliberate bypass. See *United States ex rel. Schaedel v. Follette,* 447 F.2d 1297, 1300 (2d Cir. 1971). We therefore proceed to consider the merits of appellant's petition.

### Error in the Instruction

■ Kibbe now contends that the question of causation was a pivotal issue at trial and that the judge's failure to instruct the jury with respect to that issue allowed the jury to convict without finding that every element of the crime had been proven beyond a reasonable doubt. On the limited and singular facts of this case, we agree.

In order to satisfy the constitutional requirements of due process, a criminal conviction must be supported by proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970). It is the essence of a fair trial and of the right to jury trial that the jury apply the reasonable doubt standard to determine those issues of fact that bear on the elements of the offense, see *United States v. Screws,* 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, 1505 (1945); *United States v. Hayward,* 136 U.S. App.D.C. 300, 420 F.2d 142 (1969), and presumably it is in accordance with this mandate that New York requires the trial judge to state to the jury "the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts. . . ." N.Y.C.P.L. § 300.10 (McKinney 1971). See *People v. Walker,* 198 N.Y. 329, 334, 91 N.E. 806 (1910) (every essential element of a crime presents a question of fact for the jury's exclusive determination).

■ In this case, by the language of the statute, the state was bound to prove to the jury beyond a reasonable doubt that appellant evinced a depraved indifference to Stafford's life, recklessly engaged in con-

duct that created a grave risk of Stafford's death, and thereby caused Stafford's death. The court scrupulously instructed the jury with respect to the meaning of "recklessly", "depraved", "grave", and "indifferent" as used in Penal Law § 125.25(2). The omission of any definition of causation, however, permitted the jury to conclude that the issue was not before them or that causation could be inferred merely from the fact that Stafford's death succeeded his abandonment by Kibbe and Krall.

■ Even if the jury were aware of the need to determine causation,[5] the court's instruction did not provide the tools necessary to that task. The possibility that jurors, as laymen, may misconstrue the evidence before them makes mandatory in every case instruction as to the legal standards they must apply. See *United States v. Burse,* 531 F.2d 1151 at 1153 (2d Cir. 1976). Error in the omission of an instruction is compounded where the legal standard is complex and requires that fine distinctions be made. That is most assuredly the situation in this case. It has been held that where death is produced by an intervening force, such as Blake's operation of his truck, the liability of one who put an antecedent force into action will depend on the difficult determination of whether the intervening force was a sufficiently independent or supervening cause of death. See W. LaFave & A. Scott, Criminal Law 257–63 (1972) (collecting cases).[6] The few

---

5. The trial judge made brief mention of the term "causation" in his charge when he stated: "You will not consider either (first degree manslaughter or second degree manslaughter) unless you feel that these defendants or either of them, was guilty of causing the death of George Stafford recklessly." This instruction, however, was given in the context of explaining the relation between reckless conduct and manslaughter rather than in the context of a definition of causation. In fact, by emphasizing "recklessly", the judge may have implied that the jury could assume causation and had only to determine whether recklessness was involved.

The above recounting of numerous instances in which the defense attempted to shift responsibility for Stafford's death away from appellant suggests that the jury may have been aware of the necessity of finding that appellant's conduct was the cause of that death. The motions to dismiss for failure of the prosecution to demonstrate causation, however, were made outside the presence of the jury; although the defense also raised the causation question in summations, Kibbe's counsel began his summation by noting that his remarks did not constitute evidence and that the trial judge alone was responsible for instructing the jury regarding the law. In the absence of an instruction concerning causation, the jury was unlikely to make the inference that it was to determine the question of causation from hearing the statute read and from listening to the defense examination of witnesses. In any event, there was no detailed definition of causation commensurate with the definitions of other terms in the statute.

6. The complexity of the definition of legal causation in LaFave and Scott, supra, demonstrates that an explanation of the concept of intervening and supervening cause would have been not merely helpful (as contended by Judge Mansfield), but essential to the jury's determination here. Given the proper standard for causation, the jury could have found that Blake had been so reckless as to absolve defendants of legal responsibility for Stafford's death:

> As might be expected, courts have tended to distinguish cases in which the intervening act was a *coincidence* from those in which it was a *response* to the defendant's prior action. An intervening act is a *coincidence* when the defendant's act merely put the victim at a certain place at a certain time, and because the victim was so located it was possible for him to be acted upon by the intervening cause. The case put earlier in which B, after being fired upon by A, changed his route and then was struck by lightning is an illustration of a coincidence. However, it is important to note that there may be a coincidence even when the subsequent act is that of a human agency, as where A shoots B and leaves him lying in the roadway, resulting in B being struck by C's car; or where A shoots at B and causes him to take refuge in a park, where B is then attacked and killed by a gang of hoodlums.
>
> By contrast, an intervening act may be said to be a *response* to the prior actions of the defendant when it involves a reaction to the conditions created by the defendant.
>
> Thus—though the distinction is not carefully developed in many of the decided cases—it may be said that a coincidence will break the chain of legal cause unless it was foreseeable, while a response will do so only if it is abnormal (and, if abnormal, also unforeseeable).
>
>     *   *   *   *   *   *
>
> This kind of accident must be distinguished from a somewhat different situation, as

cases that provide similar factual circumstances suggest that the controlling questions are whether the ultimate result was foreseeable to the original actor and whether the victim failed to do something easily within his grasp that would have extricated him from danger.[7]

The New York appellate courts applied these standards and found that there was sufficient evidence to uphold the convictions. We have no reason to doubt that conclusion. There was evidence that Kibbe and Krall left Stafford near traffic and in an intoxicated condition without eyeglasses or sufficient clothing on a winter evening, and all of this could be considered to determine causation. The sufficiency of the evidence, however, is not the subject of our inquiry. Our sole concern is whether the jury was adequately instructed in order to make the same finding beyond a reasonable doubt. As this function was within the exclusive province of the jury, the appellate courts may not substitute their own findings for the jury's possible failure to consider the issue. See *United States v. Howard*, 506 F.2d 1131, 1134 (2d Cir. 1974). There was evidence that Kibbe and Krall abandoned Stafford near an open and lighted service station and that although Stafford was intoxicated he was not helpless. It also appeared that Blake was less than diligent in the operation of his motor vehicle. If the jury had been cognizant of the proper legal standards, this evidence, if believed, could have injected an element of reasonable doubt into the jury's delibera-

tions as to whether defendants foresaw or could have foreseen that about one-half hour after they abandoned Stafford he would be struck in the middle of a highway lane by the driver of a speeding truck who failed to react in such a way to avoid a collision.

We are convinced that the trial judge's incomplete instructions took a necessary determination of causation of death from the jury and thereby deprived appellant of his right to due process. See *United States ex rel. Smith v. Reincke*, 239 F.Supp. 887 (D.Conn.), aff'd, 354 F.2d 418 (2d Cir. 1965); cert. denied, 384 U.S. 993, 86 S.Ct. 1896, 16 L.Ed.2d 1010 (1966). See also *United States v. Singleton*, 532 F.2d 199 (2d Cir. 1976); *United States v. Hines*, 256 F.2d 561, 564 (2d Cir. 1958). Since the error in the instruction reaches constitutional dimensions, it may be corrected on habeas corpus. *Kenion v. Gill*, 81 U.S.App.D.C. 96, 155 F.2d 176 (1946). The writ is granted as to any detention arising from the murder conviction, unless retrial of the petitioner is commenced within 60 days from the date of the filing of this order.

---

MANSFIELD, Circuit Judge (dissenting):

With due respect I must dissent because in my view the deficiency in the trial judge's instruction regarding causation did not reach constitutional dimensions entitling the petitioner to federal habeas relief. See *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 393 (1973);

where A, with intent to kill B, only wounds B, leaving him lying unconscious in the unlighted road on a dark night, and then C, driving along the road, runs over and kills B. Here C's act is a matter of coincidence rather than a response to what A has done, and thus the question is whether the subsequent events were foreseeable, as they undoubtedly were in the above illustration.[73]

[73] *People v. Fowler*, 178 Cal. 657, 174 P. 892 (1918). Perhaps if C were driving in a reckless way, A would not be liable. If A in the Fowler case had merely an intent to injure, but not to kill, A would be guilty of manslaughter; but no doubt A, having put B in an unconscious or helpless position on a dark road, has an affirmative duty to act

to pull him off the road, and failure to act under the circumstances where A knows death is substantially certain to occur (or even where he realizes there is a very high risk though no certainty of such death) should make him guilty of murder of the intent to kill (or of the depraved heart) variety.

Without a proper definition of causation, the jury, if it considered causation at all, could have found that Blake's conduct, no matter how reckless, could merely supplement and not supervene defendants' culpability.

7. See *State v. Preslar*, 48 N.C.Rep. 421 (1856) (deliberate choice of victim to forego place of safety exonerates defendant of liability for victim's subsequent death from exposure).

*Schaefer v. Leone,* 443 F.2d 182 (2d Cir. 1971).

There was ample evidence to support a finding by the jury beyond a reasonable doubt that the defendants were guilty of murder in violation of N.Y.Penal Law § 125.25(2). The proof was clear that the defendants evidenced a depraved indifference to human life and that they recklessly engaged in conduct which not only created a grave risk of death to the victim, George Stafford, but was a direct cause of his death. See *People v. Kibbe,* 35 N.Y.2d 407, 362 N.Y.S.2d 848, 321 N.E.2d 773 (1974). On a dark, cold night (temperature 4°) the defendants placed their intoxicated victim into their automobile, drove away, robbed him and left him on a highway, with his boots off, his pants down or off, and stripped of eyeglasses he needed to be able to focus. They deserted him at a point about a quarter of a mile from the nearest shelter, a gasoline station located on the other side of the highway. It was readily foreseeable that in his condition Stafford might be struck and killed by a motorist, which is what happened.

The jury was well aware that it had to find beyond a reasonable doubt that the defendants' conduct was a direct cause of Stafford's death and that death was not attributable solely to the motorist. In his summation the prosecutor argued repeatedly that although the immediate or direct cause of the victim's death was the conduct of the motorist who struck him, the reckless conduct of the defendants was a substantial producing cause of his death because they were "bound to anticipate that he would be struck by a car, struck and killed by a car" and "these two defendants were aware of and consciously disregarded a substantial and unjustifiable risk that death would result."[1] In his summation one defense counsel conversely argued that the cause of death was not his client's conduct but that of the motorist.

Against this background the trial judge instructed the jury that a person is guilty of murder in violation of § 125.25 when "under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, *and thereby causes the death of another person.*" (Emphasis added). Furthermore he instructed the jury that it could not consider the alternate crimes of manslaughter in the first degree or manslaughter in the second degree "unless you feel that these defendants or either of them, was guilty of causing the death of George Stafford recklessly."

No exception was taken by defense counsel to the charge as thus given by the court, and no question was raised as to the sufficiency of the charge on defendants' appeal to the Appellate Division, see *People v. Kibbe,* 41 A.D.2d 228, 342 N.Y.S.2d 386 (4th Dept. 1973). The adequacy of the instruction was first raised by the dissenting opin-

---

[1]. "There is one other aspect that I'd like to talk about on this first count, and also actually in regard to the second count. As I mentioned not only does the first count contain reference to and require proof of a depraved indifference to a human life, it proves that the defendant recklessly engaged in conduct which created a risk of death in that they caused the death of George Stafford. Now, I very well know, members of the jury, you know, that quite obviously the acts of both of these defendants were not the only the direct or the most preceding cause of his death. If I walked with one of you downtown, you know, and we went across one of the bridges and you couldn't swim and I pushed you over and you drowned because you can't swim, I suppose you can say, well, you drowned because you couldn't swim. But of course, the fact is that I pushed you over. The same thing here. Sure, the death, the most immediate, the most preceding, the most direct cause of Mr. Stafford's death was the motor vehicle, the truck driven by Mr. Blake that hit him right square, the middle of the grill, I think he said, that Mr. Stafford was seated or I forget how he described him, he's not standing up, or at least he's on his knees or he is sitting down with his hands up in the middle of the northbound lane. Sure, that's the most direct cause of death. But how did he get there? Or to put it differently, would this man be dead had it not been for the acts of these two defendants? And I submit to you, members of the jury, that the acts of these two defendants did indeed cause the death of Mr. Stafford. He didn't walk out there on East River Road. He was driven out there. His glasses were taken and his identification was taken and his pants were around his ankles." (Tr. 1155–57).

ion of one justice of the Fourth Department.

Although it might have been helpful to the jury to have a more definitive instruction on the element of causation, including an explanation of the concepts of proximate, superseding, and intervening causation, I cannot agree with the majority that such a detailed instruction was constitutionally required or that the failure to give it permitted "the jury to conclude that the issue was not before them." We are not here dealing with such fundamental unfairness as failure to advise the jury that the defendant was presumed to be innocent or the substitution by the court in its instruction of a preponderance-of-the-evidence for a reasonable doubt standard, see *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Here the jury plainly was made aware by the summations of the necessity of finding that the defendants' conduct was the cause of the victim's death even though it may not have been the only cause. In these circumstances the court's instruction was sufficient to enable the jury intelligently to go about its business. It was readily apparent to the jury, without detailed instructions on the subject, that it could not find the defendants guilty if death was attributable entirely to some intervening force which superseded the defendants' recklessly indifferent conduct. As the New York Court of Appeals unanimously concluded in affirming the conviction, the evidence was overwhelming that the defendants' conduct in depositing their intoxicated robbery victim on the highway in darkness and 4° weather, partially clothed and without eyeglasses, was the direct cause of his death.

"The defendants do not dispute the fact that their conduct evinced a depraved indifference to human life which created a grave risk of death, but rather they argue that it was just as likely that Stafford would be miraculously rescued by a good samaritan. We cannot accept such an argument. There can be little doubt but that Stafford would have frozen to death in his state of undress had he remained on the shoulder of the road. The only alternative left to him was the highway, which in his condition, for one reason or another, clearly foreboded the probability of his resulting death." 35 N.Y.2d at 407, 362 N.Y.S.2d at 852, 321 N.E.2d at 776.

I cannot subscribe to the idea that on such a record they were denied any constitutional right by the brevity of the court's charge on causation. Their trial was a fair one.