# HENDERSON, CORRECTIONAL SUPERINTENDENT
## v. KIBBE

No. 75–1906.   Argued March 1, 1977—Decided May 16, 1977

*Lillian Zeisel Cohen,* Assistant Attorney General of New York, argued the cause for petitioner. With her on the briefs were *Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Margery Evans Reifler,* Assistant Attorney General.

*Sheila Ginsberg* argued the cause for respondent. With her on the brief were *William E. Hellerstein* and *Phylis Skloot Bamberger.**

---

*\*Lawrence T. Kurlander* filed a brief for Monroe County, N. Y., as *amicus curiae.*

Mr. Justice Stevens delivered the opinion of the Court.

Respondent is in petitioner's custody pursuant to a conviction for second-degree murder. The question presented to us is whether the New York State trial judge's failure to instruct the jury on the issue of causation was constitutional error requiring a Federal District Court to grant habeas corpus relief. Disagreeing with a divided panel of the Court of Appeals for the Second Circuit, we hold that it was not.

On the evening of December 30, 1970, respondent and his codefendant encountered a thoroughly intoxicated man named Stafford in a bar in Rochester, N. Y.[1] After observing Stafford display at least two $100 bills,[2] they decided to rob him and agreed to drive him to a nearby town. While in the car, respondent slapped Stafford several times, took his money, and, in a search for concealed funds, forced Stafford to lower his trousers and remove his boots. They then abandoned him on an unlighted, rural road, still in a state of partial undress, and without his coat or his glasses. The temperature was near zero, visibility was obscured by blowing snow, and snow banks flanked the roadway. The time was between 9:30 and 9:40 p. m.

At about 10 p. m., while helplessly seated in a traffic lane about a quarter mile from the nearest lighted building, Stafford was struck by a speeding pickup truck. The driver testified that while he was traveling 50 miles per hour in a 40-mile zone, the first of two approaching cars flashed its lights— presumably as a warning which he did not understand. Immediately after the cars passed, the driver saw Stafford sitting in the road with his hands in the air. The driver neither swerved nor braked his vehicle before it hit Stafford. Stafford was pronounced dead upon arrival at the local hospital.

---

[1] A pathologist testified that the alcohol content in Stafford's blood was indicative of a "very heavy degree of intoxication." App. 58.

[2] Tr. 723.

Respondent and his accomplice were convicted of grand larceny, robbery, and second-degree murder.[3]  Only the conviction of murder, as defined in N. Y. Penal Law § 125.25 (2) (McKinney 1975), is now challenged.  That statute provides that "[a] person is guilty of murder in the second degree" when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, *and thereby causes the death of another person.*"  (Emphasis added.)

Defense counsel argued that it was the negligence of the truckdriver, rather than the defendants' action, that had caused Stafford's death, and that the defendants could not have anticipated the fatal accident.[4]  On the other hand, the prosecution argued that the death was foreseeable and would not have occurred but for the conduct of the defendants who

---

[3] Respondent was sentenced to concurrent terms of 15 years to life on the murder conviction; 5–15 years on the robbery conviction; and an indeterminate term of up to four years on the grand larceny conviction.

[4] "Let's look at this indictment.  Count 1 says and I will read the important part.  That the defendant, 'Felon[i]ously and under circumstances evincing a depraved indifference to human life recklessly engaged in conduct which created a grave risk of death to another person, to wit, George Stafford and thereby caused the death of George Stafford.'  So, you can see by the accent that I put on reaching that, the elements of this particular crime, and which must be proven beyond a reasonable doubt.

.     .     .     .     .

". . . [Y]ou are going to have to honestly come to the conclusion that here is three people, all three drinking, and that these two, or at least my client were in a position to perceive this grave risk, be aware of it and disregard it.  Perceive that Mr. Stafford would sit in the middle of the northbound lane, that a motorist would come by who was distracted by flashing lights in the opposite lane, who then froze at the wheel, who then didn't swerve, didn't brake, and who was violating the law by speeding, and to make matters worse, he had at that particular time, because of what the situation was, he had low beams on, that is a lot of anticipation.  That is a lot of looking forward.  Are you supposed to anticipate that somebody is going to break the law when you move or do something?  I think that is a reasonable doubt."  App. 68.

therefore were the cause of death.[5] Neither party requested the trial judge to instruct the jury on the meaning of the statutory requirement that the defendants' conduct "thereby cause[d] the death of another person," and no such instruction was given. The trial judge did, however, read the indictment and the statute to the jury and explained the meaning of some of the statutory language. He advised the jury that a "person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense *when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur* or that such circumstance exists." App. 89 (emphasis added).

The Appellate Division of the New York Supreme Court affirmed respondent's conviction. *People* v. *Kibbe,* 41 App. Div. 2d 228, 342 N. Y. S. 2d 386 (1973). Although respondent did not challenge the sufficiency of the instructions to the jury in that court, Judge Cardamone dissented on the ground that the trial court's charge did not explain the issue of causation

---

[5] "As I mentioned not only does the first count contain reference to and require proof of a depraved indifference to a human life, it proves that the defendant recklessly engaged in conduct which created a risk of death in that they caused the death of George Stafford. Now, I very well know, members of the jury, you know, that quite obviously the acts of both of these defendants were not the only the direct or the most preceding cause of his death. If I walked with one of you downtown, you know, and we went across one of the bridges and you couldn't swim and I pushed you over and you drowned because you can't swim, I suppose you can say, well, you drowned because you couldn't swim. But of course, the fact is that I pushed you over. The same thing here. Sure, the death, the most immediate, the most preceding, the most direct cause of Mr. Stafford's death was the motor vehicle . . . . But how did he get there? Or to put it differently, would this man be dead had it not been for the acts of these two defendants? And I submit to you, members of the jury, that the acts of these two defendants did indeed cause the death of Mr. Stafford. He didn't walk out there on East River Road. He was driven out there. His glasses were taken and his identification was taken and his pants were around his ankles." *Id.,* at 75–76.

or include an adequate discussion of the necessary mental state. That judge expressed the opinion that "the jury, upon proper instruction, could have concluded that the victim's death by an automobile was a remote and intervening cause." [6]

The New York Court of Appeals also affirmed. 35 N. Y. 2d 407, 321 N. E. 2d 773 (1974). It identified the causation issue as the only serious question raised by the appeal, and then rejected the contention that the conduct of the driver of the pickup truck constituted an intervening cause which relieved the defendants of criminal responsibility for Stafford's death. The court held that it was "not necessary that the ultimate harm be intended by the actor. It will suffice if it can be said beyond a reasonable doubt, as indeed it can be here said, that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused." [7] The court refused to consider the adequacy of the charge to the jury because that question had not been raised in the trial court.

[6] 41 App. Div. 2d, at 231, 342 N. Y. S. 2d, at 390. He added:

"There are no statutory provisions dealing with intervening causes—nor is civil case law relevant in this context. The issue of causation should have been submitted to the jury in order for it to decide whether it would be unjust to hold these appellants liable as murderers for the chain of events which actually occurred. Such an approach is suggested in the American Law Institute Model Penal Code (see Comment, § 2.03, pp. 133, 134 of Tentative Draft No. 4)." *Id.*, at 231–232, 342 N. Y. S. 2d, at 390.

The dissent did not cite any New York authority describing the causation instruction that should have been given.

[7] 35 N. Y. 2d, at 412, 321 N. E. 2d, at 776. The New York court added:

"We subscribe to the requirement that the defendants' actions must be *a sufficiently direct cause* of the ensuing death before there can be any imposition of criminal liability, and recognize, of course, that this standard is greater than that required to serve as a basis for tort liability. Applying these criteria to the defendants' actions, we conclude that their activities on the evening of December 30, 1970 were a sufficiently direct cause of the death of George Stafford so as to warrant the imposition of criminal sanctions. In engaging in what may properly be described as a despicable

Respondent then filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of New York, relying on 28 U. S. C. § 2254. The District Court held that the respondent's attack on the sufficiency of the charge failed to raise a question of constitutional dimension and that, without more, "the charge is not reviewable in a federal habeas corpus proceeding." App. 21.

The Court of Appeals for the Second Circuit reversed, 534 F. 2d 493 (1976). In view of the defense strategy which consistently challenged the sufficiency of the proof of causation, the majority held that the failure to make any objection to the jury instructions was not a deliberate bypass precluding federal habeas corpus relief,[8] but rather was an "obviously inadvertent" omission. *Id.*, at 497. On the merits, the court held that since the Constitution requires proof beyond a reasonable doubt of every fact necessary to constitute the crime, *In re Winship*, 397 U. S. 358, 364, the failure to instruct the jury on an essential element as complex as the causation issue in this case created an impermissible risk that the jury had not made a finding that the Constitution requires.[9]

course of action, Kibbe and Krall left a helplessly intoxicated man without his eyeglasses in a position from which, because of these attending circumstances, he could not extricate himself and whose condition was such that he could not even protect himself from the elements. The defendants do not dispute the fact that their conduct evinced a depraved indifference to human life which created a grave risk of death, but rather they argue that it was just as likely that Stafford would be miraculously rescued by a good [S]amaritan. We cannot accept such an argument. There can be little doubt but that Stafford would have frozen to death in his state of undress had he remained on the shoulder of the road. The only alternative left to him was the highway, which in his condition, for one reason or another, clearly foreboded the probability of his resulting death." *Id.*, at 413, 321 N. E. 2d, at 776.

[8] Cf. *Humphrey* v. *Cady*, 405 U. S. 504, 517; *Fay* v. *Noia*, 372 U. S. 391, 427–428, 438–439.

[9] "The omission of any definition of causation, however, permitted the jury to conclude that the issue was not before them or that causation

Because the Court of Appeals decision appeared to conflict with this Court's holding in *Cupp* v. *Naughten,* 414 U. S. 141, we granted certiorari, 429 U. S. 815.

Respondent argues that the decision of the Court of Appeals should be affirmed on either of two independent grounds: (1) that the omission of an instruction on causation created the danger that the jurors failed to make an essential factual determination as required by *Winship;* or (2) assuming that they did reach the causation question, they did so without adequate guidance and might have rendered a different verdict under proper instructions. A fair evaluation of the omission in the context of the entire record requires rejection of both arguments.[10]

---

could be inferred merely from the fact that Stafford's death succeeded his abandonment by Kibbe and Krall.

". . . The possibility that jurors, as laymen, may misconstrue the evidence before them makes mandatory in every case instruction as to the legal standards they must apply. . . . Error in the omission of an instruction is compounded where the legal standard is complex and requires that fine distinctions be made. That is most assuredly the situation in this case. It has been held that where death is produced by an intervening force, such as Blake's operation of his truck, the liability of one who put an antecedent force into action will depend on the difficult determination of whether the intervening force was a sufficiently independent or supervening cause of death. See W. LaFave & A. Scott, Criminal Law 257–263 (1972) (collecting cases). The few cases that provide similar factual circumstances suggest that the controlling questions are whether the ultimate result was foreseeable to the original actor and whether the victim failed to do something easily within his grasp that would have extricated him from danger." 534 F. 2d, at 498–499 (footnotes omitted).

In dissent, Judge Mansfield reasoned that the arguments of counsel, the reading of the statutory definition of the crime, and the general instructions made it clear to the jury that they had to find beyond a reasonable doubt that defendants' conduct was a direct cause of Stafford's death and that the death was not attributable solely to the truckdriver. Even though instructions on intervening cause might have been helpful, Judge Mansfield concluded that the omission was not constitutional error.

[10] "In determining the effect of this instruction on the validity of respondent's [state] conviction, we accept at the outset the well-established

## I

The Court has held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra,* at 364. One of the facts which the New York statute required the prosecution to prove is that the defendants' conduct caused the death of Stafford. As the New York Court of Appeals held, the evidence was plainly sufficient to prove that fact beyond a reasonable doubt. It is equally clear that the record requires us to conclude that the jury made such a finding.

There can be no question about the fact that the jurors were informed that the case included a causation issue that they had to decide. The element of causation was stressed in the arguments of both counsel. The statutory language, which the trial judge read to the jury, expressly refers to the requirement that defendants' conduct "cause[d] the death of another person." The indictment tracks the statutory language; it was read to the jurors and they were given a copy for use during their deliberations. The judge instructed the jury that all elements of the crime must be proved beyond a reasonable doubt. Whether or not the arguments of counsel correctly characterized the law applicable to the causation issue, they surely made it clear to the jury that such an issue

proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Boyd* v. *United States,* 271 U. S. 104, 107 (1926). While this does not mean that an instruction by itself may never rise to the level of constitutional error, see *Cool* v. *United States,* 409 U. S. 100 (1972), it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Cupp* v. *Naughten,* 414 U. S. 141, 146–147.

had to be decided. It follows that the objection predicated on this Court's holding in *Winship* is without merit.

## II

An appraisal of the significance of an error in the instructions to the jury requires a comparison of the instructions which were actually given with those that should have been given. Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error.[11] It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.[12]

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.[13] The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp* v. *Naughten,* 414 U. S., at 147, not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.,* at 146.

---

[11] *Allis* v. *United States,* 155 U. S. 117, 122–123; *Harvey* v. *Tyler,* 2 Wall. 328, 339; see, *e. g., Lopez* v. *United States,* 373 U. S. 427, 436.

[12] In *Namet* v. *United States,* 373 U. S. 179, 190, the Court characterized appellate consideration of a trial court error which was not obviously prejudicial and which the defense did not mention during the trial as "extravagant protection." See *Boyd* v. *United States,* 271 U. S. 104, 108.

[13] The strong interest in preserving the finality of judgments, see, *e. g., Blackledge* v. *Allison, ante,* p. 83 (POWELL, J., concurring); *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 256–266 (POWELL, J., concurring), as well as the interest in orderly trial procedure, must be overcome before collateral relief can be justified. For a collateral attack may be made many years after the conviction when it may be impossible, as a practical matter, to conduct a retrial.

In this case, the respondent's burden is especially heavy because no erroneous instruction was given; his claim of prejudice is based on the failure to give any explanation—beyond the reading of the statutory language itself—of the causation element. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. Since this omission escaped notice on the record until Judge Cardamone filed his dissenting opinion at the intermediate appellate level, the probability that it substantially affected the jury deliberations seems remote.

Because respondent did not submit a draft instruction on the causation issue to the trial judge, and because the New York courts apparently had no previous occasion to construe this aspect of the murder statute, we cannot know with certainty precisely what instruction should have been given as a matter of New York law. We do know that the New York Court of Appeals found no reversible error in this case; and its discussion of the sufficiency of the evidence gives us guidance about the kind of causation instruction that would have been acceptable.

The New York Court of Appeals concluded that the evidence of causation was sufficient because it can be said beyond a reasonable doubt that the "ultimate harm" was "something which should have been foreseen as being reasonably related to the acts of the accused." It is not entirely clear whether the court's reference to "ultimate harm" merely required that Stafford's death was foreseeable, or, more narrowly, that his death by a speeding vehicle was foreseeable.[14] In either event, the court was satisfied that the "ultimate harm" was one which "should have been foreseen." Thus, an adequate instruction would have told the jury that if the

---

[14] 35 N. Y. 2d, at 412–413, 321 N. E. 2d, at 776. The passage of the opinion quoted in n. 7, *supra*, emphasizes the obvious risk of death by freezing, suggesting that defendants need not have foreseen the precise manner in which the death did occur.

ultimate harm should have been foreseen as being reasonably related to defendants' conduct, that conduct should be regarded as having caused the death of Stafford.

The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. One of the elements of respondent's offense is that he acted "recklessly," *supra,* at 148, 149. By returning a guilty verdict, the jury necessarily found, in accordance with its instruction on recklessness, that respondent was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" [15] that death would occur. A person who is "aware of and consciously disregards" a substantial risk must also foresee the ultimate harm that the risk entails. Thus, the jury's determination that the respondent acted recklessly necessarily included a determination that the ultimate harm was foreseeable to him.

In a strict sense, an additional instruction on foreseeability would not have been cumulative because it would have related to an element of the offense not specifically covered in the instructions given. But since it is logical to assume that the jurors would have responded to an instruction on causation consistently with their determination of the issues that were comprehensively explained, it is equally logical to conclude that such an instruction would not have affected their verdict.[16] Accordingly, we reject the suggestion that the omission of more complete instructions on the causation issue "so

[15] *Supra,* at 149. In charging the jury on recklessness the trial judge quoted the statutory definition of that term in N. Y. Penal Law § 15.05 (3) (McKinney 1975).

[16] In fact, it is not unlikely that a complete instruction on the causation issue would actually have been favorable to the prosecution. For example, an instruction might have been patterned after the following example given in W. LaFave & A. Scott, Criminal Law 260 (1972):

"*A,* with intent to kill *B,* only wounds *B,* leaving him lying unconscious in the unlighted road on a dark night, and then *C,* driving along the road, runs over and kills *B.* Here *C's* act is a matter of coincidence

infected the entire trial that the resulting conviction violated due process." Even if we were to make the unlikely assumption that the jury might have reached a different verdict pursuant to an additional instruction, that possibility is too speculative to justify the conclusion that constitutional error was committed.

The judgment is reversed.

*It is so ordered.*

MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE BURGER, concurring in the judgment.

I concur in the judgment, but I find it unnecessary to resolve the question of New York criminal law considered by the Court, *ante,* at 155–157. In my view, the federal court was precluded from granting respondent's petition for collateral relief under 28 U. S. C. § 2254 because he failed to object to the jury instructions at the time they were given. By that failure he waived any claim of constitutional error. This was precisely why the New York Court of Appeals refused to consider respondent's belated claim. Cf. *Henry* v. *Mississippi,* 379 U. S. 443 (1965).

This Court has held that under certain circumstances a defendant's failure to comply with state procedural requirements will not be deemed a waiver of federal constitutional rights, unless it is shown that such bypass was the result of a deliberate tactical decision. See *Fay* v. *Noia,* 372 U. S. 391 (1963); *Humphrey* v. *Cady,* 405 U. S. 504 (1972). These

---

rather than a response to what *A* has done, and thus the question is whether the subsequent events were foreseeable, as they undoubtedly were in the above illustration."

Such an instruction would probably have been more favorable to the prosecution than the instruction on recklessness which the court actually gave.

cases, however, involved *post*-trial omissions of a technical nature which would be unlikely to jeopardize substantial state interests. *Mid*trial omissions such as occurred in this case, on the other hand, are substantially different. "It is one thing to fail to utilize the [state] appeal process to cure a defect which already inheres in a judgment of conviction, but it is quite another to forgo making an objection or exception which might prevent the error from ever occurring." *Mullaney* v. *Wilbur,* 421 U. S. 684, 704 n. (1975) (REHNQUIST, J., concurring);* see *Estelle* v. *Williams,* 425 U. S. 501, 513–514 (1976) (POWELL, J., concurring). Thus, by failing to object to the jury charge, respondent injected into the trial process the very type of error which the objection requirement was designed to avoid. Federal courts may not overlook such failure on collateral attack.

The "deliberate bypass" doctrine of *Fay* v. *Noia, supra,* should not be extended to midtrial procedural omissions which impair substantial state interests. I would simply hold that the United States District Court was barred from examining the substance of respondent's constitutional claim, and rest our reversal of the Court of Appeals on that ground.

---

*This is not a case such as *Mullaney,* where the State's highest court ruled on the defendant's claim even though he failed to raise the issue at trial. Rather, as the Court notes, *ante,* at 150, the New York Court of Appeals here expressly refused to rule on the adequacy of the charge because respondent failed to object in the trial court.