889 F.2d 1085
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ancel James HOLLAND, a/k/a Tucky, a/k/a Tuckie, a/k/a
Shorty, Defendant-Appellant.
 No. 88-7788.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1989.
Decided Nov. 6, 1989.
Rehearing and Rehearing En Banc Denied Dec. 15, 1989.
 
 Kevin Bruce Kamenetz (Moore, Libowitz & Thomas, on brief) for appellant.
 John Vincent Geise, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney, on brief) for appellee.
 Before DONALD RUSSELL, WIDENER, and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 In 1980, Ancel James Holland was convicted of a conspiracy to distribute heroin, interstate travel in aid of racketeering, and operating a continuing criminal enterprise (CCE). We affirmed his conviction in an unpublished per curiam opinion on February 19, 1982. United States v. Holland, 673 F.2d 1318 (4th Cir.) (table), cert. denied, 459 U.S. 844 (1982). On May 12, 1988, Holland filed the present 28 U.S.C. Sec. 2255 petition. The district court granted Holland's motion to vacate and set aside the conspiracy conviction on the basis that the conspiracy conviction and the CCE conviction should merge for sentencing. All remaining relief was denied by the district court. Holland appeals, arguing that counsel at trial and on appeal was ineffective in not pursuing a specific unanimity instruction regarding the "continuing series" element of the CCE charge, and in not requesting that the indictment be redacted before being given to the jury. He also argues that, at trial, the failure of the district court to sua sponte offer a specific unanimity instruction on the "continuing series" element of the CCE charge violated the Sixth Amendment. We find that, given the overwhelming evidence of guilt presented at trial and the district court's general unanimity instruction, if there was error at all, Holland has failed to demonstrate that he was actually prejudiced by the instructions given at trial. We therefore affirm the judgment of the district court.
 
 
 2
 At trial the government produced Eugene Holland, the defendant's brother, who testified that he had been a lieutenant for the defendant in an extensive heroin organization. Eugene Holland testified that his brother, Ancel, supplied him with heroin which he sold and then turned the proceeds over to his brother. He testified that such transactions occurred three or four times a month for a year. Eugene Holland further testified that Ancel Holland on occasion used Lionel Louden, Stephanie Smith, Ronald Epps and Tyrone Holland as intermediaries to transfer the heroin and money between the brothers. Eugene Holland testified about a group meeting involving himself, Epps, Louden, Eggie Ross, Tyrone Holland, and Ancel Holland where they decided on a central location to keep the group's heroin and that the money from the sales would go to Ancel Holland. Eugene Holland also identified envelopes which carried a stamped "trademark" which identified the heroin as coming from Ancel Holland.
 
 
 3
 Harold Moody, another co-conspirator, testified that he had both received heroin from Ancel Holland and from an intermediary and had twice paid Ancel Holland directly for heroin delivery. Moody also testified that Epps, Tyrone Holland, and Eugene Holland all had informed him that their heroin source was Ancel Holland. Moody was also informed by Epps of the ring's organizational meeting. Moody, at trial, also identified the "trademark" on drug packages as identifying it as Ancel Holland heroin.
 
 
 4
 Testimony given by Stephen Claggett, another co-conspirator, was that Ancel Holland regularly supplied him with heroin which he distributed to customers and also to Louden, Tyrone Holland, Eugene Holland, and co-conspirators known to him as Poochie and Eggie Ross. Claggett further testified that he collected drug money and at various times gave it to Ancel Holland, Lionel Louden, and Ava Holland, a sister of the defendant. Claggett witnessed Lionel Louden and Eugene Holland receive heroin from Ancel Holland a number of times. Claggett also received drugs from Ava Holland at the Holland family home. Claggett accompanied Ancel Holland on trips to New York and Glen Burnie, Maryland with large sums of cash apparently to make payments to Holland's drug source.
 
 
 5
 Lewis Eaton, an informant for the Drug Enforcement Administration (DEA), testified that he had purchased heroin from both Ancel and Ava Holland. He also traveled with Ancel Holland to Philadelphia where he witnessed Ancel Holland buy heroin.
 
 
 6
 DEA Agent Tyrone Patterson testified that, acting undercover, he made several purchases of heroin from Eugene Holland in August and December of 1979. Patterson testified that the government, pursuant to a search warrant, seized $30,000 in cash from Ancel Holland's apartment. Additionally, the government seized from Ancel Holland's apartment, an apartment rented by Ancel Holland's girlfriend, or the Holland family home, the following: heroin, cocaine, a gray metal box with Ancel Holland's fingerprint on it, various cutting agents, cocaine testers, shifters, scales, glassine bags, a stamp which matched the "trademark" found on drugs which identified them as Holland drugs, and other drug paraphernalia.
 
 
 7
 Charles English, a Maryland State Police Officer, also testified about purchases of heroin from Eugene Holland which were a part of Ancel's package. Detective Michael Cannon testified about a drug buy he had witnessed between Hayes Johnson and Harold Moody. Cannon further testified that Ancel Holland was observed with co-conspirator Epps, who gave the defendant a large sum of currency.
 
 
 8
 We begin by addressing the proper standard of review for Holland's petition. "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167-168 (1982). Holland argues that the "cause" prong of Frady is satisfied by ineffective assistance of counsel and that the "actual prejudice" prong is satisfied by the lack of a specific unanimity instruction.
 
 
 9
 We first address the "actual prejudice" prong of Frady. The question is not whether failing to give the unanimity instruction is "undesirable, erroneous or even universally condemned." Id. The Court, in reaffirming a statement as to the degree of prejudice required to get collateral relief, stated that the "ailing instruction [must have] by itself so infected the entire trial that the resulting conviction violates due process." Frady, 456 U.S. at 169 (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). We therefore examine whether the lack of a specific unanimity instruction regarding the "continuing series" element of the CCE "so infected the entire trial" that Holland's conviction violates due process.
 
 
 10
 The district court did give the jury a general unanimity instruction.[1] Holland complains that the district court did not sua sponte offer a specific unanimity instruction on the "continuing series" element of the CCE. Holland principally relies on United States v. Echeverri, 854 F.2d 638 (3d Cir.1988). In Echeverri, the court held that it was reversible error not to give a requested specific unanimity instruction regarding the "continuing series" element of a CCE charge. 854 F.2d at 642. We do not decide whether Echeverri was properly decided because Holland did not request the instruction at trial and Holland's burden in this collateral attack is much higher than the defendant in Echeverri, who was making a direct appeal. We do not believe that Holland was "actually prejudiced" by the lack of the specific unanimity instruction.[2] This is so for at least the following reasons. First, the district court gave a general unanimity instruction. Second, and just as important, is the overwhelming evidence of guilt which was largely uncontradicted at trial.[3] Three of Ancel Holland's co-conspirators, including his own brother, gave damning testimony at trial. Not only was the testimony of the three co-conspirators consistent, it was corroborated by testimony of a third-party purchaser of drugs and three police officers. Large amounts of physical evidence both directly and circumstantially also supported the testimony.[4] We are convinced that even if the jury had been specifically instructed that they had to unanimously agree on the "continuing series" element of the CCE, they would still have found Ancel Holland guilty.
 
 
 11
 With respect to the fact that the district court gave a general unanimity instruction, and the fact that no specific unanimity instruction was requested by the defendant, it is certain that this state of facts would not permit ordinary procedural reversible error because the point was not saved. It is almost as certain that omitting such instruction, absent a request to give it, is not plain error that would have permitted a successful procedural attack. In view of the conclusions just reached with respect to a specific unanimity instruction, we are of the opinion that the point does not measure up to the constitutional requirement of Frady that the omission of such instruction so infects the entire trial that the conviction violates due process. Indeed, this alternate analysis would, itself, support our decision, but as pointed out above, because of the overwhelming evidence, we need not rely on it entirely.
 
 
 12
 We have also considered the claims of ineffective counsel and are of the opinion they are without merit.
 
 
 13
 The judgment of the district court is accordingly
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 The jury was instructed:
 When you retire to deliberate on this case you will exercise your individual judgment, so that when a verdict is reached it will constitute the verdict of all twelve of you and each of you individually. It is your duty, when you deliberate, to consult with one another and to deliberate with a view of reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself but, as I have said, only after an impartial consideration of the evidence with your fellow jurors. Do not hesitate to reexamine your views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions to the weight of the evidence, or the affect of the evidence, solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.... When you have reached a unanimous verdict, that is an agreement as to the verdicts, you will notify the marshal....
 
 
 [2]
 In finding no "actual prejudice" we do not reach the "cause" prong of the Frady analysis
 
 
 [3]
 The defendant's main attempt at a defense was to put on evidence that he was incarcerated at various times during the drug ring's operation, an apparent attempt at establishing an alibi. He did not attempt to dispute the existence of the various drug and money transfers or even the existence of the drug ring
 
 
 [4]
 We reject Holland's argument that the alleged complexity of the case and the unredacted indictment caused juror confusion. The case for the jury was not very complex. Much of the issue for the jury was whether to believe Eugene Holland and the other co-conspirators. Ancel Holland's theory of the case was apparently that his brother Eugene was the real kingpin of the organization. We likewise do not think that the unredacted indictment confused the jury. The district court clearly instructed the jurors on the legal significance and limitations of the indictment