**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAKEISHA LANETTE SCOTT, | No. 07-55315 |
| Petitioner - Appellant, | D.C. No. CV-05-02058-SVW |
| v. | |
| TINA HORNBEAK, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted December 7, 2010
Pasadena, California

Before: PREGERSON, CLIFTON, and BEA, Circuit Judges.

Rakeisha Lanette Scott was convicted in California state court for second

degree murder, Cal. Penal Code §§ 187, 189, assault on a child causing death, Cal.

Penal Code § 273ab, and felony child endangerment, Cal. Penal Code § 273a(a).

Scott appeals the district court's denial of her petition for a writ of habeas corpus

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

pursuant to 18 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.[1]

The California Court of Appeal, which provided the last-reasoned state court decision, determined that Scott's statement to police at questioning—"I should talk to an attorney"—was not an unequivocal request for an attorney, such that admission of her subsequent statements to police violated her Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). This determination was neither "contrary to," nor an "unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d); *see Davis v. United States*, 512 U.S. 452, 459 (1994) (holding that petitioner's statement "Maybe I should talk to a lawyer" was not an unequivocal request for counsel).

The California Court of Appeal further determined that a government-employed social worker, who testified to Scott's admissions, was not required to repeat *Miranda* warnings to Scott after Scott had already been given *Miranda* warnings by police officers. This determination was neither "contrary to," nor an "unreasonable application of, clearly established federal law," 28 U.S.C.

---

[1] Because the parties are familiar with the facts of the case, we will repeat them here only to the extent necessary to explain our decision.

2

§ 2254(d). Repeat *Miranda* warnings are required only when questioning places additional restraints on the freedom of an individual who is already in custody. *Cervantes v. Walker*, 589 F.2d 424, 428 (9th Cir. 1978). To determine whether an individual's freedom is subject to additional restraints, this court looks to "[1] the language used to summon the individual, [2] the physical surroundings of the interrogation, [3] the extent to which he is confronted with evidence of his guilt, and [4] the additional pressure exerted to detain him." *Id.* at 428. The state court determined that none of these factors existed such that Scott was subject to an additional restraint above that which existed earlier in the evening, when she received *Miranda* warnings and gave a statement to detectives. This determination was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court.

Finally, although it is uncontested that the jury instructions in Scott's trial were erroneous, the state court's determination that this error was harmless was neither "contrary to," nor an "unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d). To prevail on collateral attack on a state court jury instruction, a habeas petitioner must do more than prove that the jury instruction was "undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1975) (citation omitted). Rather, a habeas

3

petitioner must prove that the improper instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id*. (citation omitted). The mere "possibility" of a different verdict is "too speculative" to justify a finding of constitutional error. *Id.* at 157.

Here, part of the jury instructions misstated the elements for a murder conviction based upon aider and abettor liability: one is *not* liable for murder for acts the natural and probable consequences of which are merely felony child endangerment. To be liable as an aider and abettor under a natural and probable consequences doctrine, the jury must find that the co-principal[2] committed the charged offense (here, murder) not just the predicate offense (here, felony child endangerment).

The jury was erroneously instructed that Scott could be convicted of *murder* (the target offense) if it found "that a co-principal in such crime [Foster] committed the crime of *Felony Child Endangerment.*" (emphasis added). However, the state court found the error harmless, because the instructions further required the jury to find that the "crime of Murder as charged in Count One was a natural and probable

_____

[2] The jury was properly instructed that Scott and Foster were co-principals.

4

consequence of the crime of Felony Child Endangerment."[3] The state court reasoned that, in light of the evidence at trial, the only people who possibly could have committed the "crime of Murder" as a natural and probable consequence of felony child endangerment were Scott or her co-defendant Foster.

Thus, the jury either had to find that Scott committed the murder directly, or that Foster committed the murder and that Scott aided and abetted Foster. Under the aided and abetted theory, the "natural and probable consequence" test was an objective one. The jury in this case was so instructed, and Scott does not challenge that part of the instruction. To convict Scott as an aider and abetter, the jury was instructed that it had to be satisfied beyond a reasonable doubt that a reasonable person would have expected that "the crime of Murder . . . was a natural and probable consequence of the commission of the crime of Felony Child Endangerment." Because Scott and Foster acted together, and because the evidence presented to the jury did not distinguish between the two of them in terms of what each objectively could have expected, this test would necessarily produce the same outcome as to each of the two. If the jury found Scott guilty of murder under this instruction, the jury must have found facts that logically would have

_____

[3] Scott does not contend that the cross-referenced murder charge in Count One was deficient. Moreover, per a stipulation by the parties, the jury instructions for Count One were not included in the trial court's record.

resulted in a conviction of Foster for murder. That Foster was actually tried separately and was acquitted of murder based on the evidence in his trial does not alter what Scott's jury necessarily found based on the evidence presented in her trial.

We cannot hold that the state court's determination that the jury instructions did not violate Scott's constitutional rights was "contrary to," or an "unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d). For the reasons given by the state court, we are not convinced—in light of the jury instructions as a whole—that the error in instruction could have swayed the jury's verdict. Yet even were we convinced the jury *could* have reached a different verdict on the murder charge, but for the erroneous jury instruction, we cannot hold that the state court's determination that no different jury verdict could have resulted from an error-free instruction was contrary to or an unreasonable application of clearly established federal law.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

6