849 F.2d 1472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Raymond FERGUSON, Petitioner-Appellant,
v.
Norris W. McMACKIN, Superintendent, Respondent-Appellee.
 No. 87-3388.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1988.
 
 Before LIVELY and NATHANIEL R. JONES, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Raymond Ferguson, the petitioner-appellant, appeals the denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254 (1982). For the following reasons, we find his contentions without merit and therefore affirm the district court's denial of his petition.
 
 
 2
 Ferguson was indicted by the January 1980 term of the Cuyahoga County Grand Jury, Cuyahoga County, Ohio, on six counts of rape as defined in Ohio Revised Code ("O.R.C.") section 2907.02. The case proceeded to trial and Ferguson was found guilty, by a jury of his peers, of all six counts charged in the indictment. Thereafter, he was sentenced to consecutive terms of seven to twenty-five years imprisonment on two counts of rape and four to twenty-five years imprisonment on each of the four remaining counts.
 
 
 3
 Ferguson appealed his conviction to the state appellate court. That court found that the trial court had improperly limited the defendant's cross-examination of the victim. The court also found that the prosecutor had improperly commented on Ferguson's post-arrest silence. Accordingly, the case was remanded for a new trial.
 
 
 4
 The prosecuting attorney of Cuyahoga County, Ohio, however, filed a motion for leave to appeal to the Ohio Supreme Court. Ferguson filed a motion for cross-appeal. The supreme court, upon granting the motions, found that cross-examination of the victim had been improperly limited and that the state had produced insufficient evidence of sexual conduct to sustain two of the rape convictions under O.R.C. section 2907.02. Accordingly, a new trial was ordered on only four counts of rape, not the original six.[1]
 
 
 5
 On January 23, 1984, Ferguson's trial on the remaining four counts of rape began. Specifically, Ferguson was charged with two counts of rape by fellatio and two counts of rape by cunnilingus. The following evidence was presented during Ferguson's trial.
 
 
 6
 The state produced six witnesses, beginning with the victim, Susan Zelko. Zelko testified that on March 13, 1980, she was living in Columbus Park Tower Apartments in Bedford Heights, Ohio. Ferguson, she testified, was in charge of renting and managing the apartments. She stated that she first met Ferguson in February 1980, when she was looking for an apartment. Ferguson showed her the suite that she eventually rented.
 
 
 7
 Ferguson and Zelko dated before she moved into the apartment. Between mid-February and March 4, 1980, they met on at least four occasions. Zelko recalled two business meetings where she checked on the repairs made to her apartment, and two personal meetings, including coffee in his office and dinner one evening. Zelko testified that after dinner, they returned to Ferguson's rental office where they "talked and kissed a little bit." Zelko also testified that she did not see Ferguson after she moved into the apartment on March 4, 1980 until March 12, 1980.
 
 
 8
 On March 12, 1980, Zelko testified that Ferguson asked her to go with him to a nearby lounge for drinks. They returned to her apartment after midnight, i.e., approximately 1 a.m., on March 13, 1980.
 
 
 9
 She stated that five minutes after they got in the apartment, her telephone rang, and she talked to Ron Buzzatto, a close personal friend. She spoke to Buzzatto, calling from Columbus, Ohio, for 10-to-15 minutes, and "asked Ron if I could call him back," when she heard Ferguson say something behind her as he (Ferguson) was walking to the door. She testified that at that point, Ferguson's personality changed and he became "nasty." She stated that Ferguson asked her whether she wanted him to stay or leave and that she asked him to leave.
 
 
 10
 At this point in time, Zelko testified, Ferguson became very angry. He grabbed her by the neck and choked her with such force that the blood vessels in her eyes ruptured and that she lost control of her bladder and urinated in her pants.
 
 
 11
 Zelko then testified that Ferguson forced her to engage in oral sex on him, took off her clothes and forced her to engage in consecutive acts of fellatio and cunnilingus, at least two or three times each. Zelko testified that Ferguson left shortly thereafter. Also, she stated that when Ferguson first threw her to the floor, her phone rang and Ferguson ripped the cord out of the wall.
 
 
 12
 The victim was taken to the hospital by her parents. The record contains testimony that she had red marks on her neck and blotches on her face. Her face was described variously as containing broken blood vessels, or being very red, like high blood pressure, or as being flushed like "somebody gets embarrassed and their face turns red."
 
 
 13
 The police testified that they took a written statement from the victim within eight hours of the alleged rapes. Various other witnesses corroborated Zelko's testimony.
 
 
 14
 According to Ferguson, however, Zelko telephoned him for a date, drove with him to the Proud Pony, drank five or six glasses of wine at the Proud Pony, commented on the drive home that she "had to go to the bathroom," that once she arrived home she could not find her key in her purse, and therefore allowed Ferguson to use one of his master keys on the lock, and then "wet her pants before she could get to the bathroom." Ferguson meanwhile sat down on the couch. Ferguson testified that Zelko came back wearing a robe, without other clothing underneath. Ferguson said that while having intercourse with Zelko, the telephone repeatedly rang. On the third series of rings, she answered the telephone and engaged in an angry conversation with her "boyfriend." Afterward, Ferguson and Zelko talked briefly, and then the telephone rang again. Ferguson then left. Ferguson denied forcing Zelko to commit either fellatio and/or cunnilingus.
 
 
 15
 On rebuttal, Zelko denied telling Ferguson on the drive home from the bar that she had to urinate and denied going to the bathroom to urinate upon entering the apartment.
 
 
 16
 After considering the above evidence, the jury found Ferguson guilty of one count of rape only; on the other three counts he was found not guilty. Thereafter, the trial court sentenced Ferguson to a prison term of seven to twenty-five years.
 
 
 17
 The decision of the trial court was affirmed by the state appellate court. The state supreme court overruled Ferguson's motion for leave to appeal, and sua sponte dismissed his appeal on the ground that it failed to raise a substantial constitutional question.
 
 
 18
 On March 27, 1986, Ferguson filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio, Judge John Potter presiding. That petition essentially contained the same grounds for relief as those presented to us on this appeal.
 
 
 19
 On January 8, 1987, United States Magistrate James Carr filed a report with the district court in which he recommended that Ferguson's petition be denied. And, on March 25, 1987, Judge Potter issued an order in which he adopted the report of the magistrate and accordingly denied Ferguson's request for a writ of habeas corpus.
 
 
 20
 On May 12, 1987, the district court denied Ferguson's motion for a certificate of probable cause. The motion was granted, however, on September 28, 1987, by this court. Thereafter, this appeal was filed.
 
 
 21
 The named respondent, Norris McMackin, is the superintendent of the Marion Correctional Institution, located in Marion, Ohio. As superintendent, he currently has custody of Ferguson, pursuant to the trial court's sentence.
 
 
 22
 Ferguson raises three primary issues for our review. He first alleges that the trial court improperly imposed a more severe sentence upon retrial than was originally imposed at trial. Thus, Ferguson alleges that his fifth amendment due process rights were violated.
 
 
 23
 In North Carolina v. Pearce, 395 U.S. 711 (1969), the Supreme Court held that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." Id. at 725. And, in order to assure that an enhanced sentence is not the result of judicial vindictiveness, the judge's reasons for the increased sentence must be set forth affirmatively in the record. Id. at 726.
 
 
 24
 In this case, Ferguson was originally convicted of six counts of rape and given an aggregate sentence of thirty years to one hundred and twenty five years. He was retried on four counts of rape for which he had previously received an aggregate sentence of sixteen to one hundred years. After a jury trial, he was convicted of one count of rape and sentenced to a term of seven to twenty-five years. It appears, therefore, that a harsher sentence was not imposed after his second trial, and thus, the reasoning of Pearce is inapplicable.
 
 
 25
 Assuming that a harsher sentence had been given, however, Ferguson's claim still fails. The trial judge set forth his reasons for imposing upon Ferguson the maximum sentence allowed by law, and while we, or Ferguson, may disagree with his reasons, there has been absolutely no evidence produced to show that he was motivated by vindictiveness in reaching his decision. This is especially true in light of the fact that the judge who presided over Ferguson's retrial and the jury who heard his case were different parties than those involved in the first trial. See, e.g., United States v. Lippert, 740 F.2d 457, 460 (6th Cir.), cert. denied, 469 U.S. 1218 (1984).
 
 
 26
 Therefore, because Ferguson has presented no evidence to demonstrate that judicial vindictiveness played a part in his sentencing, or that he was being punished for a successful appeal, his contention as to this point is without merit.
 
 
 27
 Ferguson's second claim is that he was convicted under a vague and indefinite statute, and that the ambiguity of the statute was reflected in the court's instructions to the jury on the required elements of the alleged acts. Such a claim, however, is without merit.
 
 
 28
 It is O.R.C. sections 2907.02, 2907.05 and 2907.01(A) and (B) that are at issue. O.R.C. section 2907.02 defines rape as forced sexual conduct. Sexual conduct is defined in O.R.C. section 2907.01(A) as vaginal or anal intercourse, fellatio and/or cunnilingus. O.R.C. section 2907.05 defines gross sexual imposition as forced sexual contact. Sexual contact, as defined in O.R.C. section 2907.01(B), involves the touching of an erogenous zone of another for the purpose of sexual gratification.
 
 
 29
 Although Ferguson argues that the acts of which he was charged could have fallen within either statutory definition, and that the jury instructions blurred the two statutory definitions, therefore violating his due process rights, his contention is meritless. Ferguson also claims, again without merit, that he should have been prosecuted under the lesser offense statute.
 
 
 30
 The government, however, aptly points out that the magistrate's report, as adopted by the district court, draws a distinction between the two relevant statutory definitions. See J.App. at 142. Because we agree with the magistrate's recommendation that sexual conduct involves only the more serious sexual acts, i.e., a sexual act between the male and female sex organs, while sexual contact involves only a touching, we find the jury instructions to be a correct reflection of the law. Further, we find the statute to be neither vague nor indefinite, but precisely drawn. The alleged overlap of offenses is no greater than that found in other criminal law statutes.
 
 
 31
 Finally, we find the petitioner's argument that this type of prosecutorial discretion, i.e., the ability to choose under which statute a defendant will be prosecuted, is unconstitutional, unconvincing. Because the elements of the statute under which Ferguson was prosecuted were met, there was no error by the trial court in this regard.
 
 
 32
 Finally, Ferguson contends that the trial court trivialized the concept of reasonable doubt in its instructions and comments to the jury. When instructing the jury on reasonable doubt, the judge compared, or at least spoke of, Sirhan Sirhan's assassination of Senator Robert Kennedy. See J.App. at 158-60. While such remarks may have been unwise, they do not rise to the level necessary for habeas review. That is, the alleged improper instructions have not been shown to have so infected the trial as to render Ferguson's conviction a clear violation of his fifth amendment due process rights. Indeed, such a showing requires more than a finding that the instructions were undesirable, erroneous or universally condemned. See, e.g., Henderson v. Kibbe, 431 U.S. 145, 154 (1977). As such, Ferguson's challenge as to this point is meritless.
 
 
 33
 Therefore, because sufficient evidence was presented to support the jury's verdict of guilty as to Ferguson, all of his contentions are without merit.
 
 
 34
 Accordingly, for all of the foregoing reasons, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The court ordered judgments of acquittal on the two counts involving vaginal and anal intercourse