891 F.2d 291
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles LEWIS, Petitioner-Appellant,
v.
John M. JABE, Respondent-Appellee.
 No. 88-1522.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1989.
 
 Before KENNEDY, Circuit Judge, and CELEBREZZE and BAILEY BROWN, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner Charles Lewis was convicted of first degree murder by a Michigan jury in 1977. Lewis appeals the District Court's denial of his petition for a writ of habeas corpus. We affirm in part, reverse in part, and remand the case to the District Court for further proceedings.
 
 I.
 
 2
 In July 1977, a Michigan jury convicted Lewis of first degree murder for shooting Gerald Swpitkowski, an off-duty Detroit police officer. The prosecution's theory of the case was that Lewis had shot the decedent during an attempted robbery. To support this theory, the prosecution presented the testimony of three juvenile accomplices who were offered leniency in return for their cooperation. They testified that Lewis shot the decedent from the backseat of a Gran Torino while attempting to rob him, possibly because Lewis realized the decedent had a gun. They also testified that the group had stolen the Gran Torino and another automobile. These vehicles allegedly served as getaway cars in the killing and attempted robbery of the decedent, and the shooting and attempted robbery of Raymond Cassaban, a pizza delivery driver. The juveniles testified that Lewis shot the pizza driver shortly before shooting Swpitkowski when the pizza driver failed to respond to Lewis' demands for money.
 
 
 3
 To support the sometimes unclear testimony of the three juveniles, the prosecution put the pizza driver, Raymond Cassaban, on the stand. Cassaban identified Lewis as his assailant and testified that Lewis shot him earlier the same evening during another attempted robbery. The prosecution also presented forensic evidence showing that samples of blood, bone, and flesh removed from the exterior of a stolen Gran Torino were from a person of the same blood type as the decedent.
 
 
 4
 The defense presented quite a different picture. It portrayed the three juveniles as individuals pressured by the police into fabricating their testimony. The defense alleged that someone else shot Swpitkowski, possibly an occupant of a white Mark IV seen near the scene of the shooting. The Mark IV theory was bolstered by the testimony of several eyewitnesses, including the decedent's former partner, who saw a white Mark IV speeding from the scene. Some of the witnesses believed they saw a gunfire flash coming from the Mark IV.
 
 
 5
 The prosecution attacked the Mark IV theory from two directions. First, the prosecution presented the testimony of the owner and driver of the Mark IV whose license plate had been recorded by witnesses. He stated that he had not fired the shots and had not heard the shooting, but fled from the scene when two men ran toward his car. He also testified that he had been arrested, questioned, and his home and automobile searched shortly after the incident. The Mark IV was apparently destroyed by police after it was seized. Second, the prosecution attempted to show that the witnesses were not certain whether the shot was fired from the Mark IV. Many only saw the car flee the scene and assumed that it had been involved in the shooting. Further, most of the witnesses had been drinking and, the prosecution alleged, were in no condition to observe and remember the events clearly.
 
 
 6
 After an eight day trial, a jury found Lewis guilty of first degree murder. Having exhausted state appeals, Lewis sought a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. The District Court denied the writ and this appeal followed.[1]
 
 II.
 
 7
 Lewis first argues that the trial court erred in admitting the testimony of Raymond Cassaban.[2] Lewis asserts that the testimony violated state law, that the probative value of the testimony was outweighed by its prejudice, and that Cassaban's identification was prejudiced by a photographic identification conducted prior to trial without the presence of counsel for Lewis. We reject each of these arguments.
 
 
 8
 Cassaban testified that Lewis shot him during an attempted robbery that occurred shortly before the decedent was shot. Joint App. at 300-19. As described by Cassaban, his robbery and shooting occurred in much the same fashion as the later shooting of the decedent. The trial judge allowed the testimony on the authority of Mich.Comp.Laws Ann. § 768.27 (West 1982) which allows evidence of prior crimes to be admitted for the purposes of proving "motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question." The Michigan Court of Appeals affirmed, citing People v. Castillo, 82 Mich.App. 476 (1978).[3]
 
 
 9
 State court ruling on the admission of evidence are not open to challenge in a federal habeas suit unless admission of the evidence undermines the fundamental fairness of the trial and thereby constitutes a violation of due process. Pulley v. Harris, 465 U.S. 37 (1984); Brofford v. Marshall, 751 F.2d 845, 857 (6th Cir.), cert. denied, 474 U.S. 872 (1985); Manning v. Rose, 507 F.2d 889 (6th Cir.1974) (admitting evidence of prior robbery attempt by the defendant in a subsequent robbery prosecution did not violate due process where the prior attempt occurred in a similar location, three days before, and involved the use of similar language). The admission of evidence of other crimes to prove motive or plan does not amount to a due process violation if the other crime is "rationally connected" to the crime charged. Manning, 507 F.2d at 894; see also Oliphant v. Koehler, 594 F.2d 547 (6th Cir.), cert. denied, 444 U.S. 877 (1979) (questions concerning the admission of possibly prejudicial information about past crimes is for the trial judge). The prior crime in this case meets the rational relationship test. It occurred less than an hour before the robbery-murder of the decedent, both crimes involved the use of a shotgun, and, according to the testimony of one of Lewis' accomplices, both shootings were part of a plan to commit a robbery on the night in question. Joint App. at 418, 445, and 449. As a matter of federal constitutional law, we cannot say that the trial judge violated the petitioner's due process rights in concluding that the probative value of this evidence outweighed its prejudice.
 
 
 10
 Lewis raises for the first time on this appeal the question of whether Cassaban's in-court identification of Lewis as the man who shot him during the prior robbery attempt violated the petitioner's confrontational rights. Lewis asserts that his rights were violated because Cassaban had been shown pictures of the petitioner as part of a photo line-up without the presence of counsel for Lewis. The Supreme Court has clearly rejected the argument that counsel for the defendant must be present at photo line-ups. United States v. Ash, 413 U.S. 300 (1973).[4]
 
 III.
 
 11
 Lewis next alleges that the prosecutor erred in not producing all res gestae witnesses at the criminal trial. At the time of the petitioner's trial, Michigan law required the prosecution to call all res gestae witnesses. Mich.Comp.Laws § 767.40. The witnesses in question are five police officers who arrived on the scene of the shooting shortly after the shooting occurred. A sixth police officer who did testify at the trial asserted that one of the eyewitnesses to the shooting, Dennis Van Fleteren, who believed the shot came from the white Mark IV, was intoxicated at the time the police arrived on the scene. Lewis appears to be arguing that the other five witnesses would have contradicted the testimony of Officer Williams that Van Fleteren was intoxicated at the time of the shooting and thereby bolstered the credibility of Van Fleteren's testimony.[5] At trial, the defense argued that an occupant of the Mark IV shot the decedent.
 
 
 12
 The Michigan Appellate Court did enter a peremptory order remanding the case for an evidentiary hearing on the res gestae question in an August 22, 1980 ruling. The hearing was held in early 1981, and based on it the state trial court ruled that no error occurred. The Michigan Court of Appeals denied leave to appeal this decision. No copy of this post-conviction hearing is available on this appeal.[6] It is not entirely clear that the witnesses in question qualified under Michigan law as res gestae witnesses.[7] In any case, the res gestae requirement is a state law question. Claims based on violations of state law are for the state courts to decide. Pulley, 465 U.S. at 42 (petitioner's claim that state law required proportionality review of death penalty sentence is a state law question and therefore must be addressed to the state courts). We do not believe that the Michigan court rulings on the subject are so contrary to prior Michigan law as to constitute a due process violation.[8]
 
 IV.
 
 13
 Lewis argues that the jury instructions in his trial were grossly defective and undermined the fairness of his trial. Three errors are assigned: (1) that the judge gave an unconstitutional instruction on the reasonable doubt standard; (2) that the instruction on accomplice testimony precluded the jury from weighing the credibility of the witnesses; and (3) that the instructions on the jury's use of Cassaban's testimony about his prior robbery and assault were improper and prejudicial. We reject each of these arguments.
 
 
 14
 Federal courts will not reverse a conviction on collateral review where the instructions are merely "undesirable, erroneous, or even universally condemned." Rather the instruction must have "so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Further, the allegedly erroneous instruction is not looked at in isolation, but in the context of the overall charge. Cupp v. Naughten, 414 U.S. 141 (1973).
 
 
 15
 The trial judge apparently did make a misstatement in his explanation of the reasonable doubt standard. He stated:
 
 
 16
 Members of the jury, a reasonable doubt is just what the word implies. It is a doubt ... for which you can give a reason for entertaining. A reasonable doubt may grow out of the evidence or lack of evidence or the unsatisfactory nature of the evidence heard. A reasonable doubt is a doubt which causes you to hesitate in the ordinary affairs of life. Reasonable doubt, members of the jury, is not a flimsy, fanciful or fictitious doubt that you can raise about anything or everything. There is a reasonable doubt, a doubt which you can base sympathies or upon bias or upon prejudice. It's been said that if a juror is satisfied beyond a reasonable doubt when he or she, after a fair and full consideration of all testimony heard in the case that he or she has an abiding conviction to a moral certainty that the charge has been established as having been committed by the Defendant.
 
 
 17
 Joint App. at 660-61 (emphasis added).
 
 
 18
 Lewis argues that the underlined portion of the instruction effectively shifts the burden of proof from the state to the defendant. We disagree. Taken as a whole, the instruction does not appear misleading. Further, to the extent the misstatement was misleading it indicated that a reasonable doubt is more easily found, requiring only something on which a juror can base sympathies, bias, or prejudice.
 
 
 19
 Lewis alleges that the following instruction precluded the jury from weighing the credibility of the three accomplices:
 
 
 20
 Now, there's been much to do about the three juveniles who testified in this case. As I told you earlier, and I'm going to remind you again, that this court, Recorder's Court, has no jurisdiction whatsoever over anyone under the age of 17 years. That jurisdiction is exclusive with the Probate Court and whatever they do over there is their business and we have no control over it in this court. The statute in that case reads as follows,--this is just a portion of it: State 712.A.2, 1970 exclusive, original jurisdiction superior to and regardless of the jurisdiction of any other court and proceedings concerning any child under the age of 17 years within that county. That jurisdiction lies within the Probate Court. And the Recorder's Court, as I said, has no jurisdiction or control. There was much talk about the young men being tried in this court. If the Probate Courts decide they can waive jurisdiction on juveniles between the age of 15 and 17,--15 and 16 would be correct,--and whatever they do over there is no concern of ours. Do not let that get into your deliberations, the fact that they are not in this court being tried for this case. You are here to determine the guilt or innocence of this defendant.... As I told you, you've heard testimony about Juvenile Court proceedings concerning Jeffrey Mulligan who is currently awaiting, as I understand it, in Juvenile Court. Some of the testimony indicates that and in your deliberations today you should concern yourselves only with the guilt or innocence of Charles Lewis. You may consider evidence of the juveniles involved insofar only as it sheds light on Mr. Lewis's alleged guilt or innocence in the shooting death of Gerald Swpitkowski. You should not speculate about the possible outcome of Jeffrey Mulligan's separate proceedings. As I read to you under the laws of this state juveniles are under jurisdiction of the Juvenile Court and these proceedings mentioned are separate and distinct from the trial of Charles Lewis in Recorder's Court.
 
 
 21
 Joint App. at 666-67, 669-70 (emphasis added).
 
 
 22
 While the instruction could have been more clearly presented, we believe that it did not undermine the trial itself. Further, a fair reading of the instruction indicates that the trial judge did not want the jury to wonder why the three accomplices were not being tried with the defendant. It had nothing to do with the weight their testimony should be given.
 
 
 23
 Finally, Lewis argues that the following instruction amounts to a pronouncement that Lewis was guilty of attempting to rob and shoot Cassaban:
 
 
 24
 Now you have heard evidence tending to show that the Defendant, Charles Lewis, was guilty of another shooting in the course of an attempt[ed] armed robbery for which he is now on trial here. I am speaking of the testimony to the effect that Raymond Cassaban, the so called pizza man, testified as to being shot by Charles Lewis during an attempted armed robbery at 14170 Eastwood on July 31, 1976. Now, you are the sole judges whether to believe any such testimony, however, should you believe such evidence you are cautioned that it is before you for a limited purpose and that is for the purpose of determining if it tends to show the identity of the person who killed Gerald Swpitkowski during an attempted armed robbery as being the Defendant, Charles Lewis. And that the Defendant, Charles Lewis, specifically intended to commit the offense for which he is being tried. And that the Defendant, Charles Lewis was acting purposefully. And that is that his acts were the result of a characteristic scheme, plan or system that he used before. This evidence must not be considered by you for any other purpose. You must not, for instance, regard this evidence as showing that the Defendant is a person of bad character or that he had a disposition to commit crimes. You must not convict the Defendant because you believe he is guilty of other improper conduct. All of the evidence must convince you beyond a reasonable doubt that the Defendant committed the crime charged or you must find him not guilty.
 
 
 25
 Joint App. at 668-69 (emphasis added).
 
 
 26
 Again, while the charge is not as clear as it could have been, we cannot say that it constitutes a violation of due process. The judge specifically stated that the jury was to be the sole judge of whether to believe the testimony. The primary purpose of the instruction was to protect Lewis from conviction merely because the jury believed he shot Cassaban.
 
 V.
 
 27
 Lewis also objects to the admission of evidence from the Gran Torino. The judge admitted photographs of the car and laboratory evidence tending to show that flesh and bone samples found on the exterior of the car matched those of the decedent. Lewis' accomplices in the case testified that a similar Gran Torino was stolen by the group and used in the robbery and shooting. Lewis allegedly shot the decedent at close range from the back of the Gran Torino. The group later abandoned the Gran Torino, although the exact location the group allegedly abandoned the car did not match the location where it was discovered by police. Lewis argues on appeal that the evidence should not have been admitted because a chain of custody was not demonstrated from the time the car was abandoned by the group until the time police testing of the flesh, blood, and bone samples was complete.
 
 
 28
 Several breaks in the chain of custody are alleged. First, Lewis argues that the group parked the car on a different street from the street where police originally found the car and that the prosecution did not show how it was moved. This does not fit the traditional definition of a break in custody since the car was never in police custody before it was found. Further, one of the accomplices testified that from the pictures, the Gran Torino appeared to be the car used in the shooting. Joint App. at 252. Second, Lewis argues that the police did not show how the car got from the street where it was found to the police impound lot. The officer who found the car did testify, however, that the pictures of the car made at the precinct looked like the car she found. Joint App. at 320-21 and 458. Third, Lewis argues that the prosecution did not show how the human remains removed from the exterior of the car got to the police crime lab. While the prosecutor did not demonstrate a chain of custody, he did demonstrate that blood and flesh samples were removed from the car, tagged with a unique number, and sent to the police lab. Joint App. at 460-62. A laboratory technician testified that she tested samples tagged with the identical numbers. Joint App. at 476-78. The samples proved to be human flesh and bone matter. The blood type matched the decedent's. Ideally, the laboratory technician would also have testified that the samples arrived in sealed bags with the seals intact, however, we do not believe that this lapse caused the admission of the evidence to be fundamentally unfair.
 
 
 29
 Again, we note that alleged errors in the admission of evidence will not warrant habeas corpus relief unless they render the trial so fundamentally unfair as to violate due process. See Brofford, 751 F.2d at 857. Where an object has been sufficiently identified to establish relevance, arguments concerning breaks in the chain of custody generally go to the weight of the evidence, not its admissibility. It is not strictly necessary, as a matter of constitutional law, to prove that the object is what it is alleged to be before admitting the object. On these facts, even if the evidence was not properly admissible under state law, we do not believe that it was fundamentally unfair to admit it.
 
 VI.
 
 30
 Finally, Lewis argues that he was denied effective assistance of counsel. Lewis has an extremely difficult burden to meet in establishing this claim. The Supreme Court has established the test as follows:
 
 
 31
 First, the defendant must show that counsel's performance was "deficient." This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 32
 Strickland v. Washington, 466 U.S. 668, 687 (1984).
 
 
 33
 Petitioner sets forth eight respects in which counsel was incompetent:
 
 
 34
 1. Counsel failed to file a motion to have Raymond Cassaban's testimony suppressed.
 
 
 35
 2. Counsel failed to object to Raymond Cassaban's in-court identification.
 
 
 36
 3. Counsel failed to file a motion to have the Gran Torino, and all evidence found in the Gran Torino suppressed.
 
 
 37
 4. Counsel's opening statement proposed that the defendant was guilty as charged.
 
 
 38
 5. Counsel failed to investigate alibi witness[es], and failed to file an alibi notice.
 
 
 39
 6. Counsel erred in interjecting his personal opinion of defendant's guilt, in his closing arguments.
 
 
 40
 7. Counsel erred in failing to object to the prosecutor's closing arguments to the jury. Specifically, that the jury could find one verdict, and that of guilty.
 
 
 41
 8. Counsel failed to request an accomplice instruction.
 
 
 42
 We reject all except the fifth argument. Counsel raised a number of objections at trial, including objections to the admission of the Gran Torino evidence, Joint App. at 564-66, and objections to the admission of evidence concerning the prior shooting of Raymond Cassaban. As already noted, counsel developed a plausible alternative explanation of events, attacked the prosecution witnesses against Lewis, and made effective use of other prosecution witnesses to support the Mark IV theory. Neither the opening statement nor the closing arguments affected the fundamental fairness of the trial.
 
 
 43
 Lewis is entitled, however, to further review of his claim that trial counsel failed to investigate potential alibi witnesses. If Lewis is correct when he alleges that his attorney unreasonably failed to investigate alibi evidence,[9] then a constitutional violation may well have occurred. Blackburn v. Foltz, 828 F.2d 1177, 1182-83 (6th Cir.1987), cert. denied, 108 S.Ct. 1247 (1988). The District Court failed to address this claim in the proceedings below. On remand, the District Court should permit Lewis to present this claim. He appears to have raised it in the state court proceedings although he has not had any ruling.
 
 VII.
 
 44
 Lewis alleges in his pro se brief that in spite of his requests, he was not given a copy of the collateral res gestae hearing transcript to prepare his petition for leave to file a second delayed appeal before the Michigan Court of Appeals. Leave to file a delayed appeal was denied by the court. If his assertion that he received no transcript is correct, Lewis may have been denied his constitutional right to effective access to the courts. See Gardner v. California, 393 U.S. 367 (1969) (failure to provide a transcript of state habeas proceeding for use in subsequent state appellate court habeas petition denies a criminal defendant meaningful access to the courts); Griffin v. Illinois, 351 U.S. 12 (1956). We REVERSE the District Court's decision and REMAND the case to the District Court for a determination of whether Lewis requested a transcript and, if so, whether one was provided.
 
 
 45
 In all other respects, the District Court's order is AFFIRMED. The case is REMANDED for further proceedings not inconsistent with this opinion.[10]
 
 
 
 [1]
 Initially, the respondent asserts that Lewis is procedurally barred from raising most of his claims because he failed to object at trial. Respondent argues that the Supreme Court's decision in Harris v. Reed, 109 S.Ct. 1038 (1989) (in order for state procedural bar to apply in habeas corpus proceeding, the last state court to hear the question must make a clear statement that it is denying relief for procedural reasons), should not be applied retroactively and that this Circuit's former rule would bar Lewis' suit. Respondent relies on Stovall v. Denno, 388 U.S. 293 (1967) which sets forth rules for the retroactive application of constitutional rules of criminal procedure. This argument is misplaced. The Harris decision involves an interpretation of the adequate and independent state ground doctrine, not a new rule of criminal procedure. It would be odd to allow Harris, whose claims were rejected on appeal by the state of Illinois in 1979, to pursue habeas relief yet deny Lewis, whose claims arose just shortly before those of Harris, the same opportunity. The primary hardship this entails falls on the federal courts who hear the claims, not the state
 
 
 [2]
 No actual objection was made to the testimony of Cassaban. The objection was made during the testimony of Mark Kennedy, a co-conspirator, immediately before the prosecutor began asking questions about the prior shooting. Joint App. at 254-57. While defense counsel did not renew the objection before the testimony of Cassaban, the parties in this case and the Michigan Appellate Court have not treated this as a procedural bar to raising the issue. For the purposes of this appeal, we assume the objection made was to all references to the shooting and attempted robbery of Cassaban
 
 
 [3]
 Castillo stands for the proposition that such evidence is admissible if its probative value outweighs its prejudice. Decisions on this question are generally left to the discretion of the trial judge
 
 
 [4]
 Counsel for Lewis states in her brief that Cassaban was unable to identify Lewis during the photographic identification. This assertion is contrary to Cassaban's statements during the trial. Joint App. at 310. Because the prior photographic identification was allegedly unsuccessful, counsel asserts that the first true identification of Lewis came during the first trial. This first trial identification, it is alleged, was unnecessarily suggestive and tainted the identification in the second trial. Because the facts in the record do not support the underlying contention that Cassaban first identified Lewis as his assailant at the first trial, we see no reason to address this argument at length
 
 
 [5]
 Van Fleteren himself testified that he had consumed five or six beers before the shooting. Joint App. at 80
 
 
 [6]
 It is not clear why this transcript is unavailable. This question is more fully addressed infra. We assume that the testimony in the collateral hearing would have been favorable to the plaintiff
 
 
 [7]
 The Michigan Court of Appeals in People v. Hadley, 67 Mich.App. 688, 690 (1976), defined a res gestae witness as "one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense."
 
 
 [8]
 In his brief, Lewis argues that United States v. Valenzuela-Bernal, 458 U.S. 858 (1982), establishes that he is entitled to relief. Valenzuela-Bernal held that a defendant's fifth and sixth amendment rights were not violated where the U.S. government deported all but one of the illegal aliens that the defendant was charged with illegally transporting into the United States. The defendant desired to call the aliens as defense witnesses. The Court held that the defendant did not set forth facts that tend to show that the deportation necessarily prevented the defendant from having a fair trial. In this case, unlike Valenzuela-Bernal, Lewis made no attempt to call these witnesses himself, he merely demanded that the state produce them. Joint App. at 561. Even if Valenzuela-Bernal does provide the controlling standard, the failure to call the res gestae witnesses did not undermine the fairness of the trial. Even if all of Lewis' allegations are true, these witnesses would have provided no information about the commission of the crime
 
 
 [9]
 Lewis has alleged that several persons would vouch for the fact that he was playing in a band at a local union hall. He also alleges that he has a cancelled check stub to bolster the testimony
 
 
 [10]
 We have also examined the other argument raised by the defendant in the District Court and not briefed by appointed counsel on appeal. We reject these additional arguments for the substantive reasons stated by the District Court