UNITED STATES of America,
Plaintiff–Appellee,

v.

Carter White RAE, Defendant–
Appellant.

No. 15–1483.

United States Court of Appeals,
Sixth Circuit.

April 12, 2016.

BEFORE: SUHRHEINRICH,
McKEAGUE, and DONALD, Circuit
Judges.

SUHRHEINRICH, Circuit Judge.

Defendant Carter White Rae (Rae) appeals the district court's refusal to give a good faith jury instruction during his trial for criminal tax evasion and the court's imposition of a sophisticated means enhancement to his sentence for tax evasion. We affirm.

## I.

Rae, a dentist, owned and operated a dental practice in Rose City, Michigan. The trial record established that Rae filed income tax returns with the State of Michigan and the United States for decades, but never paid the amount owed, apparently because he believed that he was not obligated to pay income taxes. Rae signed the returns, while refuting them in lengthy, pleading-like correspondences outlining his views.[1]

The record also established, and Rae does not dispute, that he was repeatedly informed that his theories on income and taxes were legally incorrect by judicial officers and government agencies. For example, the government introduced the report and recommendation of a magistrate judge rejecting on the merits Rae's petition to quash an Internal Revenue Service summons and the district court's order adopting it. The government also presented the transcript of a colloquy between Rae and a bankruptcy judge during Rae's Chapter 13 bankruptcy hearing in 1997 discussing Rae's gross income and expenses. In addition, the government also offered numerous correspondences from both the Internal Revenue Service (IRS) and the State of Michigan Treasury Department. These included notices of IRS levy, IRS past due reminder notices, a Publication 2106, entitled "Why do I have to pay taxes?", and

final assessments or tax bills from the Michigan Department of Treasury.

Rae did not have either W–2s or Forms 1099 issued to himself by the dental practice. He also did not withhold any taxes from the paychecks he wrote to himself, though he made the required withholdings from the wages he paid to his employees.

Rae hid his income in various ways. He operated his dental practice under the name and EIN (employment identification number) of the former owner of the dental practice, R.J. Miriani, DDS, P.C., despite a contractual obligation to change the name of the practice. Rae also used Miriani's name and EIN on a business bank account and credit card account for the dental practice. He closed his personal bank account and used the business bank account and dental practice credit card, cash, and money orders to pay his personal expenses. Thus, state tax levies mailed to a local bank for accounts in Rae's name were returned to the state because the bank did not have an account for Rae. To prevent the IRS from levying against dental insurance payments owed to him, Rae arranged to have the payments made to his patients, who would then pay him for his services.

Rae did not own any real property in his own name, renting his office and living spaces, thereby preventing the government from placing liens against his interests. Rae's wife, on the other hand, owned a home in Utah in her own name. A dental hygienist, she was on the payroll of the dental practice. She was paid weekly, although she lived in another state and worked only occasionally in the practice.

Based on Rae's disclosures on his tax returns, as of November 3, 2014, he owed the federal government $465,668.26, and the State of Michigan $83,630.75, for a total of $549,299.01 for tax years 1999 to 2011.

---

1. Most of these letters were not made part of  the evidence before the jury.

Rae was charged with one count of evading his federal income tax obligation from 2001 to 2011, in violation of 26 U.S.C. § 7201 (Count 1); using the mail in furtherance of his scheme to defraud the United States and the State of Michigan, in violation of 18 U.S.C. § 1341 (Count 2); and willfully providing materially false information to the IRS by claiming that regular payments made to his wife were payroll expenses, in violation of 18 U.S.C. §§ 1001 and 1002. Prior to trial and again at the close of the government's case, Rae requested a good faith jury instruction based on *Cheek v. United States,* 498 U.S. 192, 203, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (holding that an honest but mistaken, even unreasonable, view of tax laws negates willfulness).[2] The district court denied Rae's request. The jury convicted Rae on all three counts.

Over Rae's objection, the district court increased Rae's base offense level by two levels because it found that the offense involved sophisticated means. *See* U.S. Sentencing Guidelines Manual § 2T1.1(b)(2). This yielded a total offense level of 22. Coupled with a criminal history category I, the resulting advisory guidelines range was 41 to 51 months' imprisonment. Rae was sentenced to serve concurrent custodial sentences on all counts of 45 months' imprisonment and ordered to pay restitution totaling $549,299.01 to the United States and the State of Michigan.

Rae makes two arguments on appeal.

## II.

### A.

First, Rae alleges that the district court erred by failing to give a good faith jury

instruction regarding the tax evasion charge in Count 1, based on his belief that he was not required under the Internal Revenue Code to pay income taxes. Rae contends that the record supported a good faith defense. Challenges to a district court's decision not to give a requested jury instruction are reviewed under an abuse of discretion standard rather than de novo. *United States v. Blood,* 435 F.3d 612, 623 (6th Cir.2006). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). When reviewing a district court's decision not to give a jury instruction, we must reverse only if we find that the proposed instruction is correct, not substantially covered by the actual jury charge, and "so important that failure to give it substantially impairs defendant's defense." *United States v. Sassak,* 881 F.2d 276, 279 (6th Cir.1989).

The district court instructed the jury that as to Count 1, tax evasion in violation of § 7201, the government was required to prove that: (1) Rae owed the income tax, (2) Rae committed an affirmative act constituting an evasion or an attempt to evade or defeat his tax obligation, and (3) that in evading or attempting to evade or defeat his tax obligation, Rae acted willfully. The district court defined "willfully" as follows:

> An act or failure to act is willful. *For purposes of tax evasion … it is voluntary, intentional violation of a known legal duty rather than the result of an accident, mistake or negligence.* (Emphasis added.)

§ 7201. The district court denied the motion along with Rae's request for a good faith instruction.

---

2. Rae also filed a Motion to Dismiss Counts in which he argued that Counts 1 and 2 should be dismissed because he was not a "person" for purposes of the tax evasion statute,

■ The district court effectively and correctly instructed the jury as to willfulness, which "in this context simply means a voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam) (explaining the statutory definition of willfulness in the Internal Revenue Code); *see also United States v. Damra*, 621 F.3d 474, 502 (6th Cir.2010) (holding that the district court "effectively and correctly" instructed the jury on willfulness element by matching the language used in *Pomponio*). Because "the good faith-requirement is effectively bundled into the willfulness instruction," no separate instruction regarding good faith is required. *Damra*, 621 F.3d at 502; *see also Sassak*, 881 F.2d at 280 (holding that substance of proposed good faith belief instruction was fully covered by willfulness instruction given). Thus, a jury's finding of willfulness under this definition " 'would necessarily negate any possibility' that the defendant acted in good faith." *Damra*, 621 F.3d at 502–03 (quoting *United States v. Tarwater*, 308 F.3d 494, 510 (6th Cir.2002)). As the Supreme Court explained in *Cheek*, "one cannot be aware that the law imposes a duty upon him and yet be ignorant of it, misunderstand the law, or believe the duty does not exist." *Cheek*, 498 U.S. at 201, 111 S.Ct. 604; *see also id.*, at 205, 111 S.Ct. 604 (rejecting constitutional as-applied challenge under the *Pomponio* line of cases because such claims "reveal full knowledge of the provisions at issue and a studied conclusion, however, wrong," and not from "innocent mistakes caused by the complexity of the Internal Revenue Code").

Contrary to Rae's assertion, *Cheek* does not require a separate good faith instruction. Rather, *Cheek* merely held that the trial court in that case erred in instructing the jury that good faith was measured by an objective rather than a subjective standard, and that an unreasonable belief did not negate willfulness. *See Cheek*, 498 U.S. at 202, 111 S.Ct. 604 ("Characterizing a particular belief as not objectively reasonable transforms the inquiry into a legal one and would prevent the jury from considering it.") In short, the district court did not abuse its discretion by declining to provide an additional good faith instruction.

Rae alleges that his "various correspondence through the years" to the IRS and State of Michigan as well as his failure to respond to district court order directing him to comply with the IRS summons "show that he had a history of disbelief as to what he was told by government officials and agencies, supporting the position of his good faith belief that he did not have to pay the taxes." Reply Br. at 1. He claims that the jury instruction given was "not sufficient for the jury to adequately consider Dr. Rae's intent as displayed through his good faith defense in this case." Reply Br. at 3. But, as noted, the Supreme Court and this court have held that an instruction like the one given by the district court in this case *is* sufficient because it incorporates the concept of subjective good faith belief.

■ Furthermore, as the district court held, an additional instruction was not warranted on this record. Rae did not testify, and he did not offer any evidence at trial. And, in both opening statements and closing arguments, Rae's attorney told the jury that Rae's "theory of defense" was that he researched the law and "drew conclusions" that he was not subject to taxes, and that "even if eccentric, he held the belief in good faith." In short, Rae's argument is without merit, because the proposed good faith instruction was substantially covered by the instruction given and

its omission did not substantially impair the defense. *See Sassak,* 881 F.2d at 279.

## B.

Rae also contends that the district court erred in applying a two-point enhancement for using "sophisticated means" to hide his tax-evasive conduct. "A determination of whether conduct constitutes 'sophisticated means' is a question of fact[.]" *United States v. Kraig,* 99 F.3d 1361, 1371 (6th Cir.1996). We review the district court's factual conclusions for clear error. *United States v. Middleton,* 246 F.3d 825, 847–48 (6th Cir.2001).

The Guidelines direct that two points be added to a defendant's base offense level in a tax fraud case "[i]f sophisticated means were used to impede discovery of the existence or extent of the offense." U.S.S.G. § 2T1.1(b)(2). The commentary to that section provides the following:

> For the purposes of subsection (b)(2), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.

*Id.* at cmt. n. 5. These examples are not exclusive. *United States v. Clear,* 112 Fed.Appx. 429, 431 (6th Cir.2004).

▮ Rae contends that the district court erroneously based the enhancement on Rae's use of the prior owner's EIN, which is perfectly legal and common where a stock purchase occurred. Rae mischaracterizes the record. The district court recognized that regardless of its legality, Rae's use of the former owner's EIN was relevant to the question of Rae's use of sophisticated means to evade his taxes.

At trial, the district court remarked that Rae's use of Miriani's EIN was "[a]n interesting debatable point," but not relevant because Rae's "use of the EIN, so far as the evidence is reflected, was simply as a vehicle, an alternative vehicle to the EIN that had been procured by the doctor as a way of avoiding collection by the service." At sentencing the district court explained that the continued use of the former owner's identification number "was precisely for the point of attempting to reflect to the government the fact that the tax liability was that of the ... former owner. It was a mechanism I would categorize as intricate in nature to misidentifying the income with the associated taxpayer." The district court also provided a second basis for the enhancement:—the manner in which Rae diverted dental insurance payments owed to him so that the IRS could not place a lien on them. Both bases support the enhancement. *Cf. Clear,* 112 Fed. Appx. at 431 (holding that the defendant's depositing of checks in a warehouse bank and using family members to cash checks were sophisticated means).

Contrary to his suggestion, Rae does not resemble the defendant in *Kraig.* The *Kraig* defendant did not receive a sophisticated means enhancement because he was not personally involved in establishing Swiss bank accounts and shell corporations that facilitated a complex conspiracy to evade taxes. *Kraig,* 99 F.3d at 1371. Instead, Rae is like the defendant in *United States v. Pierce,* who received the enhancement because he gave his employer false information, used several mailing addresses to impede discovery of his tax evasion, charged excessive withholding deductions so as not to alert the IRS, and had his wife file misleading returns. *See United States v. Pierce,* 17 F.3d 146, 151 (6th Cir.1994) (remarking that "[t]his was not a case of an individual who simply lied on a 1040 form"). Rae's actions—using the former

owner's EIN and arranging for dental insurance payment to be made indirectly—similarly demonstrate a level of planning designed to avoid paying taxes that exceeds routine tax evasion. The district court did not clearly err in finding that these activities constituted sophisticated means.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.