RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARCUS HENDERSON,

*Defendant-Appellant*.

⎤
⎟
⎟
⎟
⎟
⎬   No. 20-3707
⎟
⎟
⎟
⎟
⎦

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:18-cr-00480-1—Jack Zouhary, District Judge.

Argued: April 21, 2021

Decided and Filed: June 25, 2021

Before: ROGERS, BUSH, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Thomas P. Kurt, Toledo, Ohio, for Appellant. James A. Ewing, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Thomas P. Kurt, Toledo, Ohio, for Appellant. James A. Ewing, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

BUSH, J., delivered the opinion of the court in which ROGERS and LARSEN, JJ., joined. ROGERS, J. (pp. 9), delivered a separate concurring opinion.

───────────────

## OPINION

───────────────

JOHN K. BUSH, Circuit Judge. Marcus Henderson, a guard at the Lucas County jail, took a bribe to smuggle contraband into the jail. Unfortunately for him, the person who paid the

bribe was part of an FBI sting operation. At his first trial, a jury convicted Henderson of providing contraband in prison. But it hung on the other count, Hobbs Act extortion under color of official right. The government retried Henderson on that count, and this time—with slightly different jury instructions—the jury convicted him. He challenges that conviction on two grounds. First, he argues that the court abused its discretion by denying a proposed jury instruction that would have clarified the meaning of "official act," an element of Hobbs Act extortion. Second, he argues that the government's evidence was insufficient to convict him because the statutory definition of official act does not encompass his actions. Both arguments are unavailing. We affirm.

I.

In the Lucas County Corrections Center, prisoners are prohibited from having a variety of items, including cell phones and tobacco. Those items are contraband. During the summer of 2015, leaders at the county sheriff's office believed that corrections officers were smuggling contraband into the jail for prisoners and contacted the FBI for help. To investigate, the FBI put together a sting operation, enlisting an inmate and his girlfriend to approach a guard and offer him money to smuggle contraband into the jail. At the time, Marcus Henderson was a guard at the jail. He was the target of the sting operation.

The inmate whom the FBI had enlisted asked Henderson to reach out to the inmate's girlfriend about smuggling contraband into the jail. Henderson texted the girlfriend, and they arranged to meet up so she could give him a cell phone and tobacco to smuggle into the jail, plus $500 for his troubles. Henderson smuggled those items into the jail and gave them to the inmate.

In doing so, Henderson violated the Lucas County jail's strict rules on how officers should deal with contraband. Any officer who finds contraband must "book[] [it] into evidence" and write a report. That report automatically triggers a hearing before a disciplinary board that typically consists of one clergyman, one inmate-services member, and one jail lieutenant. The disciplinary board hears evidence, typically the officer's report, decides guilt or innocence, and, if necessary, determines the appropriate punishment. Some kinds of contraband possession can

also lead to criminal charges.  After delivering the phone and tobacco, Henderson did not file a contraband report.

A grand jury indicted Henderson for a misdemeanor count of providing contraband in prison, 18 U.S.C. § 1791(a)(1), and a felony count of Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951.  At his first trial, the district court gave the following instruction defining an official act for purposes of Hobbs Act extortion:

> [A]n official act is a decision or action on a question, matter, cause, suit, proceeding or controversy.  The question, matter, cause, suit, proceeding or controversy must involve a formal exercise of governmental power.  That is similar in nature to a lawsuit before a Court, a determination before an agency, or a hearing before a committee.  It must also be something specific and focused that is pending or may by law be brought before a public official.  To qualify as an official act, the public official must make a decision or take an action on that question, matter, cause, suit, proceeding, or controversy, or agree to do so.

During its deliberations, the jury asked the district court five questions to try to clarify the meaning of the phrase official act.  The court simply referred the jurors back to the original instruction.  The jury then convicted Henderson of providing contraband, but it could not reach a verdict on the Hobbs Act count.

As the parties prepared for Henderson's second trial on the Hobbs Act count, Henderson again asked the district court to include in its instruction that an official act must be "similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee."  This time, the district court decided that including that language was unduly confusing for the jurors and misleading based on the facts of the case and removed it from the instructions.  So the second jury heard this instruction:

> Official act has two parts.  First, a question, matter, cause, suit, proceeding or controversy that may at any time be pending, or may by law be brought before a public official; and must involve a formal exercise of governmental power; and be something specific and focused.  Second, the public official made a decision or took an action on that question or matter, or agreed to do so.

In their closing arguments, both parties focused on whether any of Henderson's actions rose to the level of an official act.

The government argued that the exercise of government power was Henderson's decision to insulate the inmate from punishment by declining to report his possession of contraband. It compared Henderson's case to a police officer taking a bribe in exchange for not writing a speeding ticket. And it emphasized that inherent in Henderson's agreement to smuggle contraband was an implicit agreement not to report the inmate's contraband possession.

Henderson's attorney spent much of his closing arguing that smuggling contraband is not an official act. He then argued that failure to report could not be the official act for two reasons: first, because Henderson was bribed only to smuggle contraband, and his failure to report was not part of the agreement; and second, because Henderson's failure to report was a failure to act, which cannot be an official act.

The jury convicted Henderson. He now appeals.

## II.

Henderson challenges his conviction on two grounds. First, he argues that the district court should have included in its jury instruction on official acts the Supreme Court's language in *McDonnell v. United States* explaining that an official act must be "similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." 136 S. Ct. 2355, 2372 (2016). Second, he argues that in light of *McDonnell*, none of his actions fit within the definition of official act, so the evidence was insufficient to support his conviction.

Both of Henderson's arguments turn on *McDonnell*, so we will offer a bit of background up front. The relevant statutory definition says than an official act is "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3). That text has two components: first, there must be a "question, matter, cause, suit, proceeding or controversy" that has or could come before a government official, and second, the official must make a decision or take an

action on that question. *McDonnell*, 136 S. Ct. at 2372. In the context of Hobbs Act extortion charges against a governor, the Supreme Court in *McDonnell* explained that the relevant question or matter must involve a "formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *Id.*

A. REJECTION OF THE DEFENDANT'S PROPOSED JURY INSTRUCTION

We review jury-instruction challenges for an abuse of discretion. *United States v. Godofsky*, 943 F.3d 1011, 1019 (6th Cir. 2019). A district court abuses its discretion in that regard when: (1) the denied instruction correctly stated the law; (2) the actual instruction did not substantially cover the denied instruction; and (3) the denied instruction concerned such an important point in the trial that its absence substantially impaired the defense. *Id.* Henderson's argument falters on the third prong, so we do not address the first two. *See PDK Labs. Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("[I]f it is not necessary to decide more, it is necessary not to decide more." (Roberts, J., concurring in part and in the judgment)).

In explaining the third prong, we have said that "the court's refusal to give an instruction does not substantially impair the defense when the jury was already 'well aware' of that defense theory." *Godofsky*, 943 F.3d at 1027 (quoting *United States v. Jackson*, 347 F.3d 598, 607 (6th Cir. 2003)). That is the case here. At Henderson's second trial, the question whether his conduct amounted to an official act was the sole subject of dispute. Henderson's primary contention was that smuggling contraband into the jail did not meet the statutory definition of an official act.

Closing arguments crystallized the issue for the jury: the government specifically argued that Henderson's decision not to report the inmate's possession of contraband was the official act for which the jury should convict him. It argued that the question or matter the case raised was whether the inmate should be punished for having contraband and that Henderson made a decision on that matter when he declined to report the inmate's possession of contraband. The government's explicit identification of the question or matter as whether the inmate should "receive any punishment for having dangerous contraband in jail" ensured that the jury would not convict Henderson for smuggling contraband alone. As we explain below, acting to affect the outcome of a review board proceeding fits within the Supreme Court's explanation of a

question or matter as "similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *McDonnell*, 136 S. Ct. at 2372.[1]

Moreover, nothing in the jury instruction kept Henderson's counsel from arguing at length in his response that smuggling contraband did not fit within the statutory definition of an official act. *See United States v. Rae*, 645 F. App'x 376, 379–80 (6th Cir. 2016) (looking to whether counsel could adequately present an argument to the jury despite the claimed jury-instruction error). And nothing in the instruction kept him from arguing that Henderson's failure to report the contraband was not an affirmative act. He was able to present his defense theory to the second jury. The jury just rejected that theory.

In response, Henderson argues that the inconsistency between the two juries' verdicts must mean that the changed instruction harmed his case. But the vagaries of the jury chamber often defy easy explanation. *Cf. United States v. Sachs*, 801 F.2d 839, 845 (6th Cir. 1986) ("[I]t is not necessarily inconsistent for two juries to reach differing results."). What's more, as Henderson acknowledges, the government offered more evidence on the nature of the disciplinary board at the second trial. That could have tipped the scales.

Either way, Henderson acknowledges that the only argument the requested instruction would have made more compelling is his argument that smuggling is not an official act. But because the jury was well aware of that defense theory and the prosecution did not dispute it, denying an instruction that could have bolstered it did not substantially impair Henderson's defense.

B. SUFFICIENCY OF THE EVIDENCE

We review challenges to the sufficiency of the evidence de novo. *United States v. Alebbini*, 979 F.3d 537, 543 (6th Cir. 2020). Normally the defendant still "bears a heavy burden" because we must view the evidence in the light most favorable to the government and

---

[1]That differentiates Henderson's case from the Eleventh Circuit's decision in *United States v. Van Buren*, 940 F.3d 1192, 1196 (11th Cir. 2019), *rev'd on other grounds*, 141 S. Ct. 1648 (2021). There, the Eleventh Circuit held that the government identified the incorrect "question" and the jury instruction kept Van Buren's counsel from addressing the government's mistake. 940 F.3d at 1204. Here, by contrast, the prosecution correctly identified the relevant question as whether a disciplinary board would punish the inmate. ]

affirm if any rational trier of fact could have voted to convict. *Id.* (quoting *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015)). But when, as is the case here, a challenge focuses on whether the statute under which the defendant was convicted covers the relevant conduct, it presents a legal question that we examine anew. *See United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021).

The parties generally agree on the underlying facts, with one important exception: whether Henderson implicitly agreed, as part of the bribe, not to report the inmate's possession of contraband. A jury could fairly infer that Henderson did not understand himself to be selling his silence because his own self-interest—rather than the agreement—would keep him from reporting the inmate. But a jury could also infer that part of any illegal transaction includes an implicit promise not to rat out one's partner as soon as the transaction ends. Because that is a fair inference, we must assume that the jury reached it. *See United States v. Sumlin*, 956 F.3d 879, 891 (6th Cir. 2020) (explaining that we must "draw all available inferences" in favor of the verdict (quoting *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997))).

With that, the factual basis for the charge is clear. Henderson accepted money in exchange for declining to alert his supervisors or report that the inmate had contraband. He had an affirmative duty to file that report. And had he filed that report, it would have automatically triggered a disciplinary board proceeding.[2] That leaves only the legal question whether Henderson's decision not to file the contraband report meets the statutory definition of official act.

An official act has two components.

First, there must be a "question, matter, cause, suit, proceeding or controversy." 18 U.S.C. § 201(a)(3). As the Court explained in *McDonnell*, those things "must involve a

---

[2]The parties dispute whether we look to the evidence about the scope of the disciplinary board proceeding from the first or second trial (it was slightly scarcer at the first). Henderson argues that if the district court had correctly (in his view) granted a judgment of acquittal as a matter of law after the first trial, he never would have had a second trial, so we should only look to the evidence at the first trial. But in *Richardson v. United States*, the Supreme Court held that "[r]egardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial." 468 U.S. 317, 326 (1984). The argument that we can look only to the evidence from the first trial is, in effect, a backdoor double jeopardy argument, so *Richardson* forecloses it.

formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." 136 S. Ct. at 2372. They "must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official." *Id.* (quoting 18 U.S.C. § 201(a)(3)).

Here, a disciplinary board proceeding about the inmate's possession of contraband meets that definition. It is a formal exercise of governmental power that resembles an agency adjudication or court proceeding—the panel members take evidence, adjudicate guilt, and determine consequences. The inmate's possession of contraband could by law be brought before that panel. So there was a "matter" that the jury could reasonably find in this case.

Second, the public official must make a decision or take an action on the matter. 18 U.S.C. § 201(a)(3). *McDonnell* held that "[s]etting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information" does not satisfy this component. 136 S. Ct. at 2371. Instead, the statute requires the official to make a concrete decision or take a concrete action (or agree to make or take one) that the official intends to affect the outcome of the matter at hand. *See id. McDonnell* also clarified the Court's holding a century earlier in *United States v. Birdsall*, 233 U.S. 233 (1914), explaining that *Birdsall* held that "a decision or action to advise another official" falsely on a pending question constituted an official act. *McDonnell*, 136 S. Ct. at 2371.

Here, Henderson's decision not to report that the inmate possessed contraband kept the disciplinary board proceeding from ever happening. It is, in a way, a variation on the facts of *Birdsall*—instead of giving false information to persuade a superior to make a decision, Henderson declined to give any information at all, which kept his superiors from knowing that they needed to make a decision in the first place. The decision not to act remains a decision, and in this case that decision directly controlled the outcome of the disciplinary board proceeding that would have occurred had the inmate's possession of contraband come to light.

III.

For those reasons, we affirm.

_____

**CONCURRENCE**

_____

ROGERS, Circuit Judge, concurring.  I concur in full.

Our opinion, however, should not be read to signal, by negative implication, that a prison guard's intentional failure to keep dangerous contraband out of prison would not itself—without reliance on some possible post hoc hearing—be an official act for the Hobbs Act purposes.  It is hard to imagine that the Supreme Court in such a case would not distinguish the high-government-official context of *McDonnell v. United States*, 136 S. Ct. 2355 (2016).  The federal bribery statute, which the parties agree governs the Hobbs Act analysis here, covers a wide range of public officials, including any "officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof . . . in any official function, under or by authority of any such department, agency or branch of Government." 18 U.S.C. § 201(a)(1).  Many such employees may not be involved in proceedings that are analogous to formal lawsuits, agency determinations, or hearing committees.  The Supreme Court's concerns that a broad definition of "matter" would criminalize an elected official's receipt of money for a broad range of unofficial or semi-official actions—such as arranging meetings or setting up phone calls on behalf of constituents—simply do not apply here. *McDonnell*, 136 S. Ct. at 2372.  A prison guard's intentional failure to stop prison smuggling of dangerous contraband in contrast goes to the very core of his sworn duty.  Of course, as the majority explains, the disciplinary proceeding at issue here provides us with a formal exercise of power that clearly satisfies the *McDonnell* criteria, but our holding today should not be construed as always requiring something like a potential hearing.  Because the government's briefing focuses on Henderson's violation of his affirmative duty to report the contraband, which prevented a disciplinary proceeding, we need not—and do not—determine just how narrowly the "question" or "matter" requirement should be construed where, as here, the defendant is not an elected official.